[No. D004779. Fourth Dist., Div. One. Jan. 12, 1987.]

DEAN MICHAEL HERRICK, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
ANTHONY DiIOIA, Real Party in Interest.

COUNSEL

McCormick & Royce and Kevin R. Graham for Petitioner.

No appearance for Respondent.

Larabee & Loadman and Dale R. Larabee for Real Party in Interest.

OPINION

LEWIS, J.—Plaintiff, Anthony DiIoia, dba Balloonatiks, sued defendant Dean Michael Herrick for property damage arising out of a motor vehicle accident, alleging Herrick became intoxicated with reckless disregard for the safety of persons and property, drove while under the influence of alcohol,

failed to stop for a posted stop sign, and collided with plaintiff's truck being driven by plaintiff's employee. Plaintiff sought damages for interference with business interest, loss of employee's services, loss of the goodwill of the business, and loss of business opportunities, and punitive damages.[1] The trial court granted Herrick's motion to strike plaintiff's claim for punitive damages but overruled his demurrer. Defendant Herrick seeks a writ of mandate or prohibition to compel the trial court to sustain his demurrer, contending the California Supreme Court has ruled California provides an employer no cause of action for *negligent* injury to his business employee. (Citing *I.J. Weinrot & Son, Inc.* v. *Jackson, supra,* 40 Cal.3d 327 (hereafter *Weinrot*).)

Plaintiff asserts *Weinrot* does not bar recovery for injury to his employee or his business because he has alleged intentional, rather than negligent injury. He says conscious disregard of consequences by a reckless intoxicated driver is an intentional tort, citing *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890 [157 Cal.Rptr. 693, 598 P.2d 854]. *Taylor* was a decision holding the act of driving a motor vehicle while intoxicated could constitute an act of "malice" within Civil Code section 3294, permitting recovery of punitive damages. No California authority discusses whether drunk driving, as described in the *Taylor* decision, amounts to an intentional tort for purposes of establishing a cause of action for injury to a business employee, or for intentional interference with contract.

We originally denied Herrick's petition for an extraordinary writ, but the California Supreme Court upon petition for review ordered us to issue our order to show cause, citing *Weinrot.*

*Weinrot* refutes at length the argument that Civil Code section 49, subdivision (c), provides a cause of action for negligent harm to a business employee. The statute says, "The rights of personal relations forbid: . . . [a]ny injury to a servant which affects his ability to serve his master, other than seduction, abduction or criminal conversation." The court said this statute was only intended to codify the common law action for loss of services of a domestic servant. However, in addition to rejecting a cause based on the statute, the opinion also necessarily held California law affords no other basis for the cause of action. The court affirmed the sustaining of a demurrer to the employer's complaint for expenses and lost profits attributable to negligent injury to its employee. Also, *Weinrot* restated much of the discussion in an earlier decision, *Offshore Rental Co.* v. *Continental Oil Co.* (1978) 22

---

[1]While the facts here, unlike those in *I.J. Weinrot & Son, Inc.* v. *Jackson* (1985) 40 Cal.3d 327 [220 Cal.Rptr. 103, 708 P.2d 682], may give rise to a claim of subrogation pursuant to Labor Code section 3852 because of workers' compensation payments, no such cause of action has yet been pled.

Cal.3d 157 [148 Cal.Rptr. 867, 583 P.2d 721], giving the policy reasons why Louisiana law similarly provides no such cause of action. Among these policy reasons were possible financial hardship caused by assessment of exaggerated claims of loss of services of a key employee, and ability of the employer to protect itself by securing key employee insurance. (See *I.J. Weinrot & Son, Inc.* v. *Jackson, supra,* 40 Cal.3d at p. 340, quoting *Offshore Rental Co.* v. *Continental Oil Co., supra,* at p. 164.) *Weinrot* also pointed out the overwhelming majority of jurisdictions presently reject the cause of action, primarily because "the doctrine . . . is obsolete, archaic and outmoded and . . . as an instrument of social policy, . . . has no relevance to present-day employer-employee relationships." (*I.J. Weinrot & Son, Inc.* v. *Jackson, supra,* at p. 340.)[2]

*Weinrot* also contains the following reference to intentional injury: "And, of course, the possibility of recovery for intentional interference with contractual relations (a theory of tort unknown at common law) provides for relief when the third party's conduct is calculated to disrupt the employer-employee relationship." (*I.J. Weinrot & Son, Inc.* v. *Jackson, supra,* 40 Cal.3d at p. 341.)

■ Although dicta, the foregoing language may be seen as indicating support for an employer's cause of action for intentional injury to his employee, but the use of the phrase "calculated to disrupt" suggests a relatively high degree of purposefulness should be required to establish this tort. Does the conscious disregard of consequences exhibited by a deliberate drunken driver, described in *Taylor, supra,* 24 Cal.3d 890, satisfy this requirement? We think not.

*Taylor* justified imposing punitive damages upon the "deliberate" drunk driver for many reasons, including the high degree of foreseeability of injury and damage flowing from driving while intoxicated. The court says the essential allegation is "[d]efendant became intoxicated and thereafter drove a car while in that condition, despite his knowledge of the safety hazard he created thereby." (*Taylor* v. *Superior Court, supra,* 24 Cal.3d at p. 896.) The decision also discusses the grave havoc wrought by intoxicated drivers nationwide and equates the act of deliberately driving while under the influence with a conscious and deliberate disregard of the interests of others which may be described as willful or wanton. (*Taylor* v. *Superior Court, supra,* 24 Cal.3d at p. 899.) Such conduct, the court said, has traditionally been a basis for awarding punitive damages.

---

[2]The overwhelming majority of jurisdictions have concluded there should be no liability for negligent injury to a business employee. (See Annot. (1981) 4 A.L.R.4th 504, and Supp. thereto; Prosser & Keeton, Torts (5th ed. 1984) § 129, pp. 997, 1001; Rest.2d Torts (1979) §§ 766, 766C.)

The risk of injury posed by drunken driving includes the risk of harm to a business employee, as well as other risks to relationships which may give rise to actions for, e.g., loss of consortium, wrongful death, negligently inflicted emotional distress, and other possible tort remedies redressing possible losses caused by reckless driving. Accordingly, considerations of foreseeability alone do not justify distinguishing this case from *Taylor*. But the willful or wanton disregard of consequences inherent in deliberate drunk driving is not the equivalent of the calculated disruption of the employer-employee relationship referred to in *Weinrot*.

We have examined the reasons why most jurisdictions reject liability for *negligent* harm to a business employee, but are willing to recognize liability for intentional harm.

Courts which have considered the problem have recognized the obsolete, archaic nature of the concept of the employee as "servant" or as property of the employer or "master." *Weinrot* discusses the social obsolescence of the common law action "*per quod servitium amisit*" ("whereby he lost the service of his servant") which it views as the basis of Civil Code section 49, subdivision (c). The court says the premise "that domestic servants were quasi-chattels did not suit contemporary views and conditions." (*I.J. Weinrot & Son, Inc.* v. *Jackson, supra*, 40 Cal.3d at p. 342.)

Some courts have rejected the cause of action because they visualize an unending possible chain of economic consequences of a negligent act, not readily limited, and better dealt with by business planning devices such as key man insurance. (See Prosser & Keeton, *op. cit. supra*, at p. 1001.) A New York decision refers to the possible proliferation of fraudulent claims, unlimited liability, arbitrary distinctions, difficulty of deciding foreseeability, potential unlimited or burdensome liability, and existence and availability of key man insurance. (*Ferguson* v. *Green Island Contracting Corp.* (3d Dept. 1974) 355 N.Y.S.2d 196, affd. (1975) 368 N.Y.S.2d 163 [328 N.E.2d 792].) A Wisconsin case considers public policy factors weighing against imposition of liability, including remoteness of injury, disproportion of injury to culpability, extraordinary nature of result, unreasonable burden on negligent tortfeasor, likelihood of fraudulent claims, and finally, that allowing recovery would enter a field having no sensible or just stopping point. (*Hartridge* v. *State Farm Mut. Auto. Ins. Co.* (1978) 86 Wis.2d 1 [271 N.W.2d 598, 4 A.L.R.4th 495].)

The decision in *Snow* v. *West* (1968) 250 Or. 114 [440 P.2d 864, 865], says the cause of action is basically not for negligence but rather has its modern inception in the tort of intentional interference with contract. Other decisions rejecting the negligence cause of action make similar observations.

(E.g., *I.J. Weinrot & Son, Inc.* v. *Jackson, supra,* 40 Cal.3d 327; *Ireland Elec. Corp.* v. *Georgia Highway Exp., Inc.* (1983) 166 Ga.App. 190 [303 S.E.2d 497, 499].) The Restatement Second of Torts, *supra,* discusses the topic of recovery for harm to an employee under the section dealing with intentional interference with contract (Rest.2d Torts, § 766), and points out this tort is intentional in the sense the defendant must have either desired to bring about the harm or known his conduct was substantially certain to produce this result. (Introductory Note to ch. 37, p. 5.) The knowledge must include awareness of the contract with which defendant is interfering and of the fact he is interfering with it. (Rest.2d Torts, § 766, com. i, p. 11.)

The seminal California case dealing with the tort of intentional interference with contract (not, however, involving injury to a business employee) similarly requires intention, saying liability is premised on intentional, active inducement of breach. (*Imperial Ice Co.* v. *Rossier* (1941) 18 Cal.2d 33 [112 P.2d 631].)

Many cases, while rejecting the cause of action for negligent harm to a business employee, state intentional harm would be actionable; but there appears to be no decision actually involving a cause of action for intentionally harming an employee. Thus, there is no judicial analysis of what level of intentionality would suffice to establish the cause of action. We have only the analysis in other kinds of interference with contract, where, as stated, the courts require knowledge of the contract and intent to interfere. (E.g. *Imperial Ice Co.* v. *Rossier, supra,* 18 Cal.2d 33.)

Closest to an opinion on the point in issue is the following language from the Restatement Second of Torts, commenting on section 766C which rejects the cause of action for negligent harm to an employee: "*d. Recklessness.* This Restatement recognizes a form of tortious conduct, called reckless disregard for safety, lying in between negligence and intentional infliction of injury. (See § 500.) It is confined, however, to reckless disregard of physical safety of another, and there is little reason to anticipate that the courts will develop a category of reckless disregard for pecuniary loss to another from conduct interfering with his contractual relations and impose liability for it when it would not be imposed for negligent interference." (Rest.2d Torts, § 766C, com. d, p. 26.) This language predicts that courts will probably not allow recovery for reckless injury to the employee. Possible reasons might be the considerations militating against imposing liability in the negligence context are equally applicable to reckless conduct; and the often mentioned fear of unlimited liability for economic consequences is a barrier to imposing liability in both situations.

The decision in *Taylor* v. *Superior Court, supra,* 24 Cal.3d 890, states many reasons to impose liability upon the reckless drunken driver. The court talks at length of the statistics showing ever increasing numbers of fatalities, horrible injuries, and property damage caused by drunken drivers, points out the need for increased judicial support and for effective means to identify and penalize such people, and notes: "It is crystal clear to us that courts in the formulation of rules on damage assessment and in weighing the deterrent function must recognize the severe threat to the public safety which is posed by the intoxicated driver. The lesson is self-evident and widely understood. Drunken drivers are extremely dangerous people." (*Taylor* v. *Superior Court, supra* 24 Cal.3d at p. 899.)

However, we conclude that the policy considerations upon which *Taylor* was based have been served by holding the defendant subject to liability for punitive damages for the injuries caused directly to such a plaintiff. Those policy considerations do not require the extension of liability in favor of an employer for injuries to his employee, in contravention of other important policy considerations.

The damages caused to plaintiff's business resulting from the injuries to his employee cannot reasonably be seen as intended by the defendant in the sense of a "calculated disruption" of plaintiff's business.

Let a writ of mandate issue directing the trial court to sustain Herrick's demurrer to plaintiff's complaint, except insofar as such complaint alleges property damages presumably to plaintiff's truck, and except as the complaint may be amended to assert a right of subrogation under Labor Code section 3852.

Wiener, Acting P. J., and Work, J., concurred.