**CITY AND COUNTY OF SAN FRANCISCO, et al.,
Plaintiffs,**

v.

**PHILIP MORRIS, INC.,
et al., Defendants.**

No. C–96–2090 DLJ.

United States District Court,
N.D. California.

Feb. 26, 1997.

Richard M. Heimann, Lieff Cabraser Heimann & Bernstein, L.L.P., San Francisco, CA, Elizabeth D. Laporte, City Attorney's Office, San Francisco, CA, for City and County of San Francisco, County of Contra Costa, County of Marin, County of Sacramento, San Bernardino County, County of San Mateo, Santa Barbara County, Santa Clara County, County of Santa Cruz, County of Shasta.

Mark B. Helm, Munger Tolles & Olson, Los Angeles, CA, Jerome C. Ruth, Munger Tolles & Olson, San Francisco, CA, Maurice A. Leiter, Arnold & Porter, Los Angeles, CA, for Philip Morris, Inc.

Michael V. Corrigan, Gerald E. Hawxhurst, Andrew T. Frankel, Mary Elizabeth McGarry, Simpson Thacher & Bartlett, New York City, for Bat Industries P.L.C.

Frank E. Schimaneck, Dryden Margoles Schimaneck Hartman Kelly & Wait, San Francisco, CA, for Liggett Group, Inc.

## ORDER

JENSEN, District Judge.

On January 22, 1997, the Court heard argument on defendants' motion to dismiss and defendants' motion to disqualify Lieff, Cabraser, Heimann & Bernstein. Elizabeth D. Laporte, Richard M. Heimann, Robert J. Nelson, and Jennifer H. Small appeared on behalf of plaintiffs; Curtis M. Caton, Dan Webb, Kevin J. Dunne, Ronald F. Scholl, H. Christian L'Orange, Susan E. Foe, and Bradley E. Lerman appeared for defendants. Having considered the arguments of counsel, the papers submitted, the applicable law, and the record in this case, the Court hereby DISMISSES plaintiffs' complaint with leave to amend and DENIES defendants' motion to disqualify counsel.

## I. BACKGROUND

Plaintiffs are the City and County of San Francisco and ten other California counties. Defendants are cigarette manufacturers and their trade associations. Plaintiffs allege that defendants have engaged in a conspiracy to mislead plaintiffs and their residents regarding the dangers associated with smoking and the addictiveness of nicotine, resulting in plaintiffs spending millions of dollars each year to provide medical services to their indigent residents suffering from diseases caused by smoking. Plaintiffs seek economic damages for their smoking-related costs, including expenditures for medical care for their residents and for health insurance for their employees. Plaintiffs also request equitable relief, including an injunction requiring defendants to disclose their research on smoking, to fund a remedial public education campaign on the health consequences of smoking, and to fund smoking cessation programs. Finally, plaintiffs seek restitution and declaratory relief.

In their first amended complaint ("FAC"), plaintiffs assert federal claims for violations of the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) and (d), against all defendants except The Tobacco Institute, Inc. ("TI") and The Council for Tobacco Research—U.S.A., Inc ("CTR") (Count I), and 18 U.S.C. §§ 1962(a) and (d), against all defendants (Count II). In addition, plaintiffs allege state law causes of action against all defendants for fraud and misrepresentation (Count III); breach of special duty (Count IV); breach of express and implied warranty (except against defendants TI and CTR) (Count V); restitution (Count VI); unjust enrichment (Count VII); and, conspiracy (Count VIII).

As the factual basis for their allegations, plaintiffs assert that beginning in the 1950s,

defendants agreed to suppress scientific and medical information regarding the deleterious health effects of smoking and the addictiveness of nicotine. In addition, defendants allegedly agreed not to compete in the market for a safer cigarette. They also allegedly directed false and misleading advertising to solicit minors and others to purchase and become addicted to cigarettes and falsely represented to the public at large and the plaintiffs specifically that they would assume a special duty to undertake all possible efforts to learn the facts and disclose the truth about smoking and health.[1] Plaintiffs claim that contrary to their promises, the defendants have attempted to keep the public ignorant of the true facts regarding smoking and addiction, with the purpose of increasing cigarette sales.

Defendants now move the Court to dismiss plaintiffs' complaint in its entirety. As a preliminary matter, the Court will briefly address defendants' motion to disqualify plaintiffs' private counsel, which motion was denied at the January 22, 1997 hearing.

## II. DISCUSSION

### A. Motion to Disqualify Counsel

Plaintiffs have contracted with Lieff, Cabraser, Heimann & Bernstein to have Lieff, Cabraser act as "Special Attorneys" pursuant to a contingent fee arrangement. Lieff, Cabraser will be paid only if plaintiffs recover money from defendants.[2] Defendants, citing *People ex rel. Clancy v. Superior Court*, 39 Cal.3d 740, 745, 218 Cal.Rptr. 24, 705 P.2d 347 (1985), argue that the Court should disqualify Lieff, Cabraser, as courts have the authority to disqualify counsel when necessary in the furtherance of justice.

In *Clancy*, the court disqualified private counsel hired pursuant to a contingent fee arrangement to represent the city in a public nuisance action. Because a government lawyer's neutrality is essential to a fair outcome for the litigants and to the proper function of the judicial process, the court held that a government attorney may be disqualified if he or she has a personal interest in the litigation extraneous to his or her official functions. *Id.* at 746, 218 Cal.Rptr. 24, 705 P.2d 347. Nonetheless, under appropriate circumstances, the government may engage private counsel. *Id.* at 748, 218 Cal.Rptr. 24, 705 P.2d 347; *see also Denio v. City of Huntington Beach*, 22 Cal.2d 580, 140 P.2d 392 (1943).

While the contingent fee arrangement here clearly gives Lieff, Cabraser a stake in the litigation, the Court finds that this case is sufficiently distinguishable from *Clancy* to allow for the government's retention of private counsel. First, as plaintiffs explain, Lieff, Cabraser is acting here as co-counsel, with plaintiffs' respective government attorneys retaining full control over the course of the litigation. Because plaintiffs' public counsel are actually directing this litigation, the Court finds that the concerns expressed in *Clancy* regarding overzealousness on the part of private counsel have been adequately addressed by the arrangement between Lieff, Cabraser and the plaintiffs.

The Court also finds that the civil tort nature of this action meaningfully distinguishes it from *Clancy*. This lawsuit, which is basically a fraud action, does not raise concerns analogous to those in the public nuisance or eminent domain contexts discussed in *Clancy*. Plaintiffs' role in this suit is that of a tort victim, rather than a sovereign seeking to vindicate the rights of its residents or exercising governmental powers.

Finally, the case as it stands now will not require the private attorneys to argue about the policy choices or value judgments suggested by defendants regarding the regulation of tobacco. Rather, plaintiffs' attorneys simply will be arguing, as they likely have in many other cases for private sector clients, that a tort has been committed against their clients.

---

1. Plaintiffs refer the Court to the January 4, 1954 "Frank Statement to Cigarette Smokers," in which the defendants announced the formation of the Tobacco Industry Research Committee (now known as CTR) *See* FAC at ¶¶ 63–64.

2. If plaintiffs prevail, Lieff, Cabraser will be reimbursed for its reasonable expenses and paid 20% of any recovery up to $25 million and 15% of any recovery in excess of $25 million.

Therefore, for the reasons discussed above, the Court has denied defendants' motion to disqualify Lieff, Cabraser.[3]

### B. Motion to Dismiss for Failure to State a Claim

#### 1. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether a plaintiff will prevail in the action, but whether she is entitled to offer evidence in support of her claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

In answering this question, the Court must assume that plaintiff's allegations are true and must draw all reasonable inferences in plaintiff's favor. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow plaintiff to develop her case at this stage of the proceedings. *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981).

If the Court chooses to dismiss the complaint, it must then decide whether to grant leave to amend. In general, leave to amend is only denied if it is clear that amendment would be futile and "that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987) (quoting *Broughton v. Cutter Laboratories,* 622 F.2d 458, 460 (9th Cir. 1980) (per curiam)); *see Poling v. Morgan,* 829 F.2d 882, 886 (9th Cir.1987) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)) (futility is basis for denying amendment under Rule 15).

#### 2. Plaintiffs' Federal Claims

In Counts I and II of their FAC, plaintiffs assert violations of RICO §§ 1962(a), (c), and (d), which sections provide as follows:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962.

Plaintiffs allege in Count I that defendants' predicate acts of racketeering are wire and mail fraud in violation of 18 U.S.C. §§ 1341 and 1342, in that defendants used the U.S. mails and wires to engage in schemes to defraud members of the public by suppressing information regarding the health consequences of smoking and by making fraudulent misrepresentations. FAC at ¶ 200. In addition, plaintiffs allege predicate acts of obstruction of justice in the form of threatening and intimidating a witness in violation of 18 U.S.C. §§ 1512 and 1513, and engaging in interstate or foreign travel in aid of racketeering activities in violation of 18 U.S.C. § 1952. *Id.* In Count II, plaintiffs allege violations of RICO § 1962(a) based on defendants' use of the proceeds of their racketeering activities to invest in enterprises engaged in racketeering activities. Finally, plaintiffs allege conspiracy to violate RICO §§ 1962(a) and (c), in violation of § 1962(d). According to plaintiffs, as a result of defendants' RICO violations, plaintiffs have been injured in

---

**3.** The Court wishes to make clear that it does not base this ruling on plaintiffs' argument that, as a matter of public policy, a contingent fee arrangement is necessary in this case to make it feasible for the financially strapped government entities to match resources with the wealthy tobacco defendants. The Court does not find this argument convincing in light of the concerns expressed in *Clancy.*

their business and property because plaintiffs have had to incur significant health care costs and expenses related to tobacco use.

Defendants contend that the remote and derivative nature of plaintiffs' injuries requires dismissal of the two RICO causes of action. Alternatively, defendants assert that even if plaintiffs' injuries are not too remote, plaintiffs are alleging personal injuries, which are not actionable under RICO.

#### a. *Proximate Cause*

■■■ RICO's provision for civil actions provides that:

> [a]ny person injured in his business or property *by reason of* a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee....

18 U.S.C. § 1964(c) (emphasis added). The United States Supreme Court has held that a plaintiff's right to sue under this section requires a showing not only that the defendant's violation was a "but for" cause of plaintiff's injury, but was the *proximate cause* as well. *See Holmes v. Securities Investor Protection Corp., et al.,* 503 U.S. 258, 266–70, 112 S.Ct. 1311, 1317–18, 117 L.Ed.2d 532 (1992). Therefore, in order to meet RICO's causation requirement, in general, a direct relationship must be shown between the injury asserted by a plaintiff and the injurious conduct alleged. "Thus, a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." *Id.* at 268–69, 112 S.Ct. at 1318; *see also, Pillsbury, Madison & Sutro v. Lerner, et al.,* 31 F.3d 924, 929 (9th Cir. 1994); *Imagineering, Inc. v. Kiewit Pacific Company,* 976 F.2d 1303, 1311 (9th Cir.1992).

■■■ Defendants assert that the injuries claimed by plaintiffs are purely contingent upon harm to third parties. According to defendants, the attenuated chain of causation upon which plaintiffs rely is as follows: (1) the tobacco manufacturers made misleading statements regarding the health consequences of smoking and manipulated the lev-

el of nicotine in cigarettes; (2) as a result of this conduct, plaintiffs' residents smoked in greater numbers and continued to smoke for longer periods of time; (3) these smokers developed health problems from their use of cigarettes; (4) these smokers then sought medical care from plaintiffs; and (5) plaintiffs spent money to provide such health care.

Plaintiffs respond that in the present case, unlike *Holmes,* their harm does not flow merely from the acts of defendants toward third parties, but from the alleged misrepresentations, concealment of information, and breach of affirmative duties directed toward the plaintiffs themselves. Plaintiffs cite *State of Florida v. American Tobacco Co.,* No. CL 95–1466–AH (Fl. Cir. Ct. Dec 13, 1996), in which a Florida state trial court addressed the proximate cause issue in the context of an alleged violation of Florida's State RICO Act. The court, looking to *Holmes,* found that the State had sufficiently plead a RICO violation in that their allegations included direct dealings between the plaintiffs and the defendants.

Plaintiffs in the present case point to their FAC at ¶¶ 226–27, where they allege that defendants undertook a direct duty to plaintiffs to cooperate in protecting the public health, to assist in research regarding the effects of tobacco on health, and to disclose to plaintiffs and their residents accurate information. Contrary to the Florida court, this Court believes that the mere fact that misrepresentations were made directly to the plaintiffs does not suffice to meet the RICO causation requirement. Rather, this Court finds that any alleged violations of duties to the plaintiffs in the present case have not been directly linked to plaintiffs' increased health care expenses given the existence of the essential intervening link of the injured individual smokers.

Plaintiffs posit that the decisions of individual smokers to smoke should not be considered an intervening cause which serves to insulate the defendants from direct liability to plaintiffs. They assert that defendants' manipulation of nicotine levels to promote addiction negates the voluntariness and independence of the smokers' decisions to smoke. However, the Court does not read any "vol-

untariness" requirement into the doctrine of intervening causes. Moreover, even if voluntariness were relevant, as a matter of law the Court regards the actions of the individual smokers as independent intervening causes of plaintiffs' injuries.[4]

As a final consideration, as discussed by the Ninth Circuit in *Pillsbury*, 31 F.3d at 928, the Supreme Court cites several policy reasons for limiting recovery under RICO to direct victims. First, there is the concern that the less direct the injury, the greater the problem for a court in ascertaining the amount of a plaintiff's damages due to the defendant's conduct, as opposed to other factors. *Id.* Second, courts must seek to avoid the risk of multiple recoveries. *Id.* Finally, courts have to take into account the fact that in most cases, the directly injured victims will have an incentive to sue based on the alleged wrongs, thereby satisfying the deterrence purposes of RICO. *Id.*

An analysis of the *Holmes* policy factors leads the Court to conclude that plaintiffs have failed to meet the RICO proximate cause requirement in this case. First, and most importantly under the present circumstances, it would be extremely difficult for the Court to ascertain the amount of damages attributable to defendants' conduct, as there are many other factors that could affect plaintiffs' smoking-related damages. For instance, in a direct suit by a smoker to recover his or her smoking-related medical expenses, the Court could inquire into any other health problems which may have exacerbated the costs of health care for that smoker. Likewise, the Court could ascertain from an individual smoker the amount of information he had regarding the risks associated with smoking. In the present suit, on the other hand, because of the lack of directness, it will be difficult, if not impossible, to explore these and other relevant issues.

Turning to the second policy concern, plaintiffs are correct that this case does not involve the risk of multiple recoveries, as those smokers directly injured from smoking

cannot assert claims to recover any medical costs which were actually paid by the city and counties. Moreover, such claims for personal injuries by individual smokers are barred under RICO, as will be discussed in the next section of this Order.

Looking to the third factor, individual smokers do not have an incentive to assert claims for medical expenses which they have not paid out-of-pocket. Nonetheless, because of the lack of directness between plaintiffs' claimed injuries and defendants' alleged conduct, the Court finds that plaintiffs' injuries do not meet the proximate cause requirements set out in *Holmes* and its progeny. Accordingly, plaintiffs' RICO claims must be dismissed.

### b. *Personal Injury*

 Even assuming plaintiffs could meet RICO's proximate cause requirement, plaintiffs cannot maintain this suit because they are claiming personal injuries which are not recoverable under RICO. RICO authorizes private civil actions for plaintiffs "injured in [their] business or property." 18 U.S.C. § 1964(c). The Ninth Circuit holds that this language precludes civil RICO actions for recovery for personal injuries, allowing recovery only if a plaintiff can demonstrate a financial loss to business or property. *See Oscar v. University Students Co-operative Association*, 965 F.2d 783, 785–86 (9th Cir.1992) (en banc); *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990) (denying RICO recovery for personal injury, including emotional distress resulting in pecuniary loss); *see also, Allman v. Philip Morris, Inc.*, 865 F.Supp. 665, 667–68 (S.D.Cal.1994) (holding that smokers cannot recover medical expenses due to nicotine addiction, as economic consequences of personal injuries are not compensable under RICO); *Genty v. Resolution Trust Corp.*, 937 F.2d 899 (3rd Cir.1991) (barring RICO recovery of medical expenses incurred for treatment of illness caused by toxic waste dump); *Doe v. Roe*, 958 F.2d 763, 770 (7th

---

4. In arguing that they meet RICO's proximate cause requirement, plaintiffs also incorrectly rely upon a theory of proximate cause based on the *foreseeability* of their injuries resulting from de-

fendants' alleged acts—a theory rejected by the Ninth Circuit in *Imagineering* in the absence of a "direct relationship" between the parties. *See* 976 F.2d at 1312.

Cir.1992); *Grogan v. Platt,* 835 F.2d 844, 846–47 (11th Cir.1988).

In *Allman,* 865 F.Supp. at 667–68, the district court held that RICO did not permit recovery by individual smokers for smoking-related personal injuries such as medical expenses. Plaintiffs here try to argue that they are not attempting to recover for personal injuries. Rather, according to plaintiffs, the city and counties have suffered purely financial loss as a result of defendants' fraudulent conduct toward plaintiffs and their residents. Plaintiffs contend that the mere fact that personal injury to their residents is a link in the causal chain does not preclude recovery for plaintiffs' direct financial losses.

Plaintiffs rely heavily on the Supreme Court's decision in *National Organization for Women, Inc. v. Scheidler,* 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). While the Court in *NOW* did take a cursory look at the question of whether the abortion clinic petitioners had standing to raise their claims under RICO, the *NOW* decision's actual holding was that RICO § 1962(c) requires no proof that the racketeering enterprise was "motivated by an economic purpose." *Id.* at 255–59, 114 S.Ct. at 803–04. In other words, the Court was looking at whether the alleged enterprise, a coalition of anti-abortion protesters, had to be a profit-seeking entity, as opposed to a politically motivated group. In briefly discussing whether the petitioners had sufficiently alleged an injury to business or property under RICO, the Court found that the petitioners did have standing because they claimed that the respondents conspired to use force to induce clinic staff to stop working and patients to obtain medical services elsewhere. *Id.* at 255–57, 114 S.Ct. at 803.

The relevant distinction between the injury alleged in *NOW* and the injury in the present case is as follows. In *NOW,* while the economic injury alleged arose out of a predicate act of threatened personal injury, the actual injury was purely financial loss. Here, on the other hand, case law dictates that the actual injury being claimed, medical expenses flowing from smoking-related illness, is a purely personal injury. *See, e.g., Allman,* 865 F.Supp. at 667–68. Thus, *NOW* cannot be used to support plaintiffs' position that they have suffered injury to their business or property, as opposed to personal injury.[5]

■ Plaintiffs' claims as stated are wholly derivative of the primary victims' claims. Those primary victims, the individual smokers, suffered personal injury resulting in health care expenses paid by plaintiffs. Financial losses resulting from personal injury unquestionably are not recoverable under RICO. *See Allman,* 865 F.Supp. at 667–68. Plaintiffs should not be allowed to avoid the bar against RICO recovery for the pecuniary loss associated with personal injury merely by asserting a derivative claim. Thus, plaintiffs' RICO claims must be dismissed on this ground as well.

While plaintiffs will be granted leave to amend their RICO claims, as the foregoing analysis makes clear, any cognizable claim stated by plaintiffs must be based on a non-derivative, non-personal injury. If such a claim cannot be stated, it may well be that plaintiffs will have to rely on traditional state law causes of action if they are to recover for their alleged injuries.

### 3. *Plaintiffs' State Law Claims*

Defendants' basic argument is that plaintiffs cannot bring the present direct action where their claims are wholly derivative of the rights of their residents who are the primary victims of smoking-related injuries. Defendants assert that the proper course of action would be for plaintiffs to bring an action in subrogation, as provided for in Cal. Gov't Code § 23004.1. Defendants also con-

---

**5.** Plaintiffs also cite *Miller v. Glen & Helen Aircraft, Inc.,* 777 F.2d 496, 498 (9th Cir.1985), for the proposition that financial loss derived from personal injury may qualify as a RICO injury. In that case the plaintiff claimed a RICO violation against an investigator hired by the defendant to investigate plaintiff's personal injury lawsuit.

The RICO predicate act was the investigator's alleged intimidation of a witness. Again, the personal injury aspect of this case only relates to the predicate act and is so minor that the case cannot be taken to stand for the broad proposition asserted by plaintiffs.

tend that all of plaintiffs' state law causes of action are barred by Cal. Civ.Code § 1714.45.

The Court will now examine defendants' contentions in the context of each of plaintiffs' state law causes of action.

### a. *Fraud and Misrepresentation*

#### i. *Cal. Civ.Code § 1714.45*

Regardless of whether plaintiffs meet the other pleading requirements for their state law causes of action, defendants assert that the state of California has chosen in Cal. Civ.Code § 1714.45 to bar such claims against tobacco manufacturers. That section provides in relevant part that, in a product liability action, a manufacturer or seller shall not be liable if:

> (1) The product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community; and

> (2) The product is a common consumer product intended for personal consumption, such as ... tobacco....

Cal. Civ.Code § 1714.45(a). "Product liability action" is defined as "any action for injury or death caused by a product, except that the term does not include an action based on a manufacturing defect or breach of an express warranty." Cal. Civ.Code § 1714.45(b). These provisions have been held to provide nearly complete immunity for manufacturers of tobacco, which would bar an action by a smoker for injuries caused by smoking. *American Tobacco Co. v. Superior Court*, 208 Cal.App.3d 480, 487, 255 Cal.Rptr. 280 (1989).

▪ Plaintiffs contend that § 1714.45 has *no effect on actions such as the present one* brought by governmental entities claiming fraud and breach of special duties. Plaintiffs claim that the present suit is not a "product liability action," in that it is based not on

injury or death, but on economic injury. They also claim that this suit is not based *on* injuries "caused by a product." Rather, they assert that their injuries were caused by defendants' dishonest conduct. Defendants respond that plaintiffs' claims clearly fit within the special definition of a "product liability action" set out in the statute, as plaintiffs' injuries are derivative of individual smokers' purely personal injuries derived from use of tobacco products.[6]

▪ While *American Tobacco*, 208 Cal. App.3d at 487, 255 Cal.Rptr. 280, did hold that it was the California legislature's intent to provide "nearly complete immunity" to the manufacturers of tobacco, that immunity extends only to product liability suits. California law recognizes a distinction between claims based on fraudulent conduct and claims based on defects in a product. *See Khan v. Shiley*, 217 Cal.App.3d 848, 855–58, 266 Cal.Rptr. 106 (1990); *see also Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 524–30, 112 S.Ct. 2608, 2622–24, 120 L.Ed.2d 407 (1992) (recognizing distinction between fraud actions and actions based on smoking and health).

Based on this distinction, the Court finds that plaintiffs' state law fraud and special duty claims are not barred by § 1714.45. While plaintiffs' argument that this is not an "action for injury or death" is unconvincing, the Court agrees with plaintiffs that at this stage they can plead that their alleged injuries have been caused by the alleged fraudulent conduct of the defendants.[7] As discussed infra, there are exceedingly difficult issues that lie ahead as to proximate cause, and perhaps others, but in light of liberal pleading standards and the California law which distinguishes between damages caused by smoking and those caused by fraud related to smoking, the Court will allow these actions to proceed.[8]

---

**6.** As plaintiffs correctly point out, § 1714.45 does not, in any case, bar claims against the trade associations, CTR and TI, as only manufacturers and sellers are shielded from liability by the statute.

**7.** However, the allegations in plaintiffs' present pleadings are deficient, in that plaintiffs currently seek to recover for injuries "due to the use of

tobacco." *See* FAC at ¶¶ 6–16. The Court will grant plaintiffs leave to amend their complaint.

**8.** Plaintiffs also assert that their equitable claims for restitution (Count VI) and unjust enrichment (Count VII) are not barred by § 1714.45. The Court need not decide this issue now, as plaintiffs' equitable claims must be dismissed on other grounds, as discussed below.

### ii. *Cal. Gov't Code § 23004.1*

■ Defendants also argue that Cal. Gov't Code §§ 23004.1 and 23004.3 provide the counties with their only remedies under the circumstances. Those Government Code sections provide counties with a right of action in subrogation to recover medical costs from tortfeasors who injure their residents. Defendants contend that these sections evidence a legislative choice not to allow derivative suits like the present one. However, the Court finds that it is not clear under California law that these sections operate to supplant common law fraud and negligence claims, rather than to provide a mere alternative to such claims. Therefore, the Court rejects defendants' argument that Cal. Gov't Code §§ 23004.1 and 23004.3 preclude this suit.

### iii. *Remoteness*

■ Defendants next rely on the concept of "remoteness" in asserting that direct tort recovery is not available for indirect economic injury resulting from negligent acts against third persons. Under California law, a person who pays the medical expenses of one who has been negligently injured by another has no direct right of action against the tortfeasor. *See Fifield Manor v. Finston*, 54 Cal.2d 632, 637, 7 Cal.Rptr. 377, 354 P.2d 1073 (1960); *I.J. Weinrot and Son, Inc. v. Jackson*, 40 Cal.3d 327, 329, 220 Cal.Rptr. 103, 708 P.2d 682 (1985). Additionally, California law precludes recovery by employers from tortfeasors for increased insurance expenses as a result of torts committed against their employees. *See Fischl v. Paller & Goldstein*, 231 Cal.App.3d 1299, 1301, 282 Cal.Rptr. 802 (1991). These principles apply in actions based on claims of *negligence*.

■ However, these doctrines do not apply in suits alleging *intentional* torts. California law recognizes a distinction between the causation requirements in intentional and negligent tort cases. The definition of "cause" in cases involving intentional torts appears to be much broader than in cases of negligence. *See Helm v. K.O.G. Alarm Co., Inc.*, 4 Cal.App.4th 194, 202, 5 Cal.Rptr.2d 615 (1992); *see also Tate v. Canonica*, 180 Cal.App.2d 898, 904, 5 Cal.Rptr. 28 (1960); *Bily v. Arthur Young & Co.*, 3 Cal.4th 370, 415, 11 Cal.Rptr.2d 51, 834 P.2d 745 (1992).[9]

■ Here, plaintiffs allege that defendants "intentionally, willfully, or recklessly" made misrepresentations about the health hazards of smoking. FAC at ¶ 216. Fraud is an *intentional* tort, the elements of which are: (1) misrepresentations [10]; (2) knowledge of falsity; (3) intent to defraud, ie., intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Cicone v. URS Corp.*, 183 Cal.App.3d 194, 200, 227 Cal.Rptr. 887 (1986) (citations omitted). No specific duty to the alleged victim of the fraud need be shown, as there is a general duty to refrain from intentional tortious conduct. *Id.* Thus, while plaintiffs' negligent misrepresentation claims cannot be maintained because of their derivative nature, the intentional misrepresentation claims which plaintiffs assert may be cognizable at this pleading stage of the case in light of the different proximate cause standard for intentional torts under California law.

■ Plaintiffs sufficiently allege that defendants made misrepresentations to both plaintiffs and the public in that they falsely represented that they would take steps to protect the public health and that they would disclose all material facts about the health consequences of smoking. FAC at ¶¶ 213–

**9.** Defendants cite *Herrick v. Superior Court*, 188 Cal.App.3d 787, 790, 233 Cal.Rptr. 675 (1987), in which the court rejected an employer's cause of action for intentional injury to his employee caused by a drunk driver. In that case, the court did not disavow the distinction between causation in negligence cases and causation in intentional tort cases. Rather, the court merely found that the drunk driver's conduct did not evidence a sufficient degree of purposefulness "calculated to disrupt the employer-employee relationship" to warrant the imposition of liability in that specific case.

**10.** A promise made without any intention to perform it is an actionable misrepresentation of fact. *See Cicone*, 183 Cal.App.3d at 203, 227 Cal.Rptr. 887. The suppression of a fact by one who is bound to disclose it, or one who gives information of other facts which are likely to mislead without disclosure of the suppressed fact, is also actionable. *See* Cal. Civ.Code § 1710.

15. Plaintiffs also properly plead that defendants knew of the falsity of their representations, FAC at ¶¶ 216–18, and intentionally concealed facts and made false statements, FAC at ¶¶ 215–19.

■ Where plaintiffs' fraud and misrepresentation claims fail is in pleading intent to defraud and justifiable reliance. To state a cause of action for fraud based on misrepresentation, a plaintiff must plead that he or she actually relied on the misrepresentation. *See Mirkin v. Wasserman,* 5 Cal.4th 1082, 1088, 23 Cal.Rptr.2d 101, 858 P.2d 568 (1993) (citations omitted). Thus, a fraud action cannot be maintained based on a third party's reliance. Plaintiffs here allege that defendants sought to and did in fact induce the *public's* reliance, thereby inducing people to purchase and use tobacco products. However, plaintiffs do not allege that the city and counties themselves were induced to rely on defendants' misrepresentations. *See* FAC at ¶¶ 219–223. The only way plaintiffs link defendants' conduct to plaintiffs is through damages, claiming that as a result of the *public's reliance* on defendants' alleged misrepresentations, plaintiffs have suffered economic damages in the form of medical and insurance costs. FAC at ¶ 224. Therefore, plaintiffs' fraud and misrepresentation claims are insufficient as plead.

While these claims are deficient in their present form, the Court will grant plaintiffs leave to amend. Plaintiffs already properly plead that misrepresentations were made to them directly and that information was concealed from them. What they need to allege now in order to state a valid claim is that those misrepresentations somehow induced *plaintiffs'* reliance, which in turn caused plaintiffs damages not purely derivative of the individual smokers' injuries.

■ Even if plaintiffs amend their complaint in the manner suggested above, there is still the issue of whether the chain of causation is too attenuated. In intentional, as opposed to negligent tort cases, courts look to some of the following factors for determining proximate cause: (1) the defendants' intent to commit harm; (2) the degree of moral culpability; (3) the seriousness of the harm intended; and (4) the connection between defendants' conduct, the harm intended, and the harm actually caused. *See* Restatement (Second) Torts § 435B; *see also Seidel v. Greenberg,* 108 N.J.Super. 248, 260 A.2d 863, 872, 874 (1969) (citing *Tate,* 180 Cal.App.2d 898, 5 Cal.Rptr. 28).

■ Looking to these factors, first, plaintiffs plainly allege that defendants' conduct was knowing and intentional. A person who acts willfully is considered to intend, as a matter of law, not only those consequences he or she wishes, but also those consequences that are substantially certain to result. *Gomez v. Acquistapace,* 50 Cal.App.4th 740, 746, 57 Cal.Rptr.2d 821 (1996) (citation omitted). Because defendants' alleged conduct was substantially likely to result in increased addiction and health care costs for both smokers and the public entities statutorily required to pay certain of those costs, defendants are deemed to have intentionally caused the harm alleged.

Second, the moral culpability of the tobacco defendants is great if plaintiffs' allegations are to be believed, as they must be at the pleading stage. If in fact the defendants conspired to deceive the plaintiffs, as well as the general public, as to the health effects of smoking and the addictiveness of nicotine in order to reap greater profits, they should be held accountable for their deliberate conduct. Third, there is no question that the harm intended was of a severe degree.

Thus, the only remaining question is whether defendants' wrongdoing is sufficiently connected to the harm caused to plaintiffs. Plaintiffs plead that defendants knew that their conduct would increase addiction, which in turn would increase health care costs, some of which inevitably would be borne by cities and counties like the present plaintiffs. If plaintiffs amend their complaint to allege that they themselves relied upon defendants' misrepresentations, thereby causing them harm, the Court believes that such pleading could be sufficient to meet the causation requirements at this stage. However, the Court wishes to stress that the concerns expressed earlier with respect to causation in the RICO context are present in the fraud context as well. As discussed above, plain-

tiffs face the difficult task of proving that the health care expenses incurred for each individual smoker were a result of that smoker's tobacco use, as opposed to some other factor.

### b. *Breach of Special Duty*

Plaintiffs assert in Count IV that defendants have breached specially assumed duties to plaintiffs and their residents. They allege that defendants voluntarily assumed these duties by issuing statements in which they promised to take an interest in the public's health, cooperate with public health officials, and aid in research efforts. The Court construes the special duty claim as plead as nearly indistinguishable from plaintiffs' negligent misrepresentation claim, with the duty of due care being based on a voluntarily, undertaken responsibility by defendants. As is made clear above, plaintiffs are unable to state a typical negligence claim due the derivative nature of their alleged injuries. The Court has serious problems with plaintiffs' attempt to circumvent the traditional limitations on tort liability by creating a separate cause of action based on an alleged "special duty." Nonetheless, the Court will not dismiss the special duty claim at the pleading stage provided that plaintiffs amend the claim in accordance with this Order.

Furthermore, while plaintiffs state in their opposition that they are claiming both intentional and negligent breach of these duties, they conceded at the hearing that their FAC is not clear on this point. Currently, the FAC alleges that defendants breached their special duty "by failing to exercise reasonable care," plainly a negligence standard. FAC at ¶ 228. Thus, plaintiffs will be granted leave to amend to explicitly state whether they are alleging a negligent breach of special duty, an intentional breach of special duty, or both.

■ Purely economic loss is recoverable in California, even if there is no privity of contract between the parties, where a "special duty" or "special relationship" is found to exist. *See J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 804–05, 157 Cal.Rptr. 407, 598 P.2d 60 (1979). In order to state a special duty claim, a plaintiff must plead the following: (1) that the defendant undertook to act for the benefit or protection of the plaintiff; (2)

that the defendant failed to do so; and (3) that the defendant's breach of the assumed duty either increased the risk of harm to the plaintiff or the plaintiff suffered injury because of reliance on the defendant's undertaking. Alternatively, a plaintiff may plead: (1) that the defendant undertook to act for the benefit or protection of a third party; (2) that the defendant failed to do so; (3) that the defendant should have recognized that the undertaking was necessary to protect the plaintiff's interests; and (4) that either: the defendant's breach increased the risk of harm to the plaintiff; the defendant undertook to perform a duty owed by the plaintiff to a third party; or that the harm was suffered because of reliance upon the undertaking by the plaintiff or third party. *FNS Mortgage Service Corp. v. Pacific General Group, Inc.*, 24 Cal.App.4th 1564, 1572, 29 Cal.Rptr.2d 916 (1994). At ¶¶ 226–30 of their FAC, plaintiffs plead the above-stated elements of a special duty claim.

■ In deciding whether to recognize a special duty in a particular case, the Court must balance the following factors: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm. *Biakanja v. Irving*, 49 Cal.2d 647, 650, 320 P.2d 16 (1958). While these factors are quite similar to those discussed above in connection with the intentional tort proximate cause inquiry, the Court will examine them again briefly here.

■ First, plaintiffs claim that defendants' conduct was intended to affect plaintiffs, as defendants pledged to cooperate with public health official and to disclose information to them. Plaintiffs allege in their opposition papers that these activities were designed to prevent government officials from taking immediate action to curb smoking. If plaintiffs choose to amend their complaint, they will need to include this specific allegation in any amended pleadings. Based on

the present pleadings, it appears that plaintiffs' claim that they suffered damages as a result of their failure to take steps to prevent smoking, in reliance upon misrepresentations by defendants, is the only claim that directly links the tobacco defendants to the city and counties. Nevertheless, as with the RICO and fraud claims, in order to recover monies spent on health care for individual smokers, plaintiffs will be required to prove that each of those smokers' injuries were actually caused by smoking.

Second, plaintiffs claim that it was reasonably foreseeable to defendants, in light of their knowledge of the health consequences of smoking, that their conduct would lead to increased health care costs for the city and counties. Third, there is no question that plaintiffs plead that they have suffered injury in the form of increased health care expenses.

Fourth, and most importantly, there is the question of whether defendants' conduct is connected closely enough to plaintiffs' injuries to warrant imposition of liability. Again, plaintiffs' claims as currently plead do not link the alleged injury directly to the defendants' alleged breach of duty. However, if plaintiffs amend their complaint to allege that they were directly injured by defendants' conduct, the Court believes that they may be able to meet the causation requirements at this stage.

Fifth, defendants' alleged acts, if proven, are morally reprehensible. Sixth, and finally, public policy dictates that defendants be held responsible for their conduct in order to prevent future harm. Based on a balancing of these factors, the Court finds that plaintiffs will state a cognizable claim for both negligent and intentional breach of a special duty if they can allege an injury *directly* caused by such breach. Therefore, the Court will dismiss with leave to amend plaintiff's claim of breach of a special duty.

### c. *Breach of Warranty*

 Plaintiffs fail to state a claim for breach of warranty. First, their claim for breach of implied warranty is barred by § 1714.45. Second, while their breach of express warranty claim is excepted from the scope of § 1714.45 immunity, plaintiffs have still failed to state a claim because they cannot assert that they themselves were users or consumers of tobacco products. *See* Cal. BAJI No. 9.40 (plaintiff must be a "buyer" to bring breach of warranty claim); Cal. BAJI No. 9.43 (defining "buyer" as the user or consumer of the product) Therefore, plaintiffs can only maintain an express warranty claim as an action in subrogation. Plaintiffs will be granted leave to amend to state such a claim.

### d. *Restitution and Unjust Enrichment*

 "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *See Restatement of Restitution* § 1 (1937). A person is enriched if he has received a benefit. *Id.* at comment a. Plaintiffs here allege that defendants engaged in wrongful acts intending to receive benefits. According to plaintiffs' opposition, one of those benefits was being spared the costs borne by plaintiffs for medical care for indigents who suffered from smoking-related illness. Plaintiffs argue that, as a result of defendants' misrepresentations, defendants have reaped substantial profits from the sale of cigarettes. These sales allegedly led to serious health problems, which ultimately resulted in increased public health costs to the plaintiffs. Plaintiffs therefore assert that defendants' failure to pay for these health care costs has unjustly enriched them.

While courts have broad equitable powers to redress wrongs, *Crain v. Electronic Memories and Magnetics Corp.*, 50 Cal.App.3d 509, 524, 123 Cal.Rptr. 419 (1975), plaintiffs are asking this Court to stretch its powers too far here. If defendants have indeed been unjustly enriched, in that their profits were increased as a result of wrongful conduct, the enrichment was at the expense of individual smokers, not of the city and counties. Plaintiffs cite no benefit which has been conferred on defendants by plaintiffs themselves. Plaintiffs have not alleged that defendants owed any duty to individual smokers to cover the costs of their medical care. Rather, while conclusorily asserting that these costs "ought to have been borne by defendants,"

FAC at ¶¶ 239, 244, plaintiffs admit that it is in fact plaintiffs' independent statutory duty to pay these costs. While plaintiffs have unquestionably spent money on health care costs for the indigent as a result of tobacco-related disease, plaintiffs cannot show that this has in any way enriched defendants. Therefore, the Court must dismiss plaintiffs' equitable claims as plead. Plaintiffs will be granted leave to amend these claims to allege some way in which plaintiffs have directly conferred a benefit upon defendants.

### e. *Conspiracy*

 Finally, plaintiffs allege that defendants conspired to conceal information, not to compete in the market for safer cigarettes, to manipulate nicotine, and to make false representations in order to promote smoking. FAC at ¶¶ 247–54. However, plaintiffs conceded at the hearing that their conspiracy claims are really claims based on the alleged underlying tortious conduct, rather than separate causes of action. Therefore, insofar as plaintiffs' conspiracy claims are necessarily plagued with the same causation problems as the rest of their tort claims, these claims are dismissed with leave to amend to the extent that they can be asserted in support of liability for plaintiffs' fraud and special duty causes of action.

### III. CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

1. Lieff, Cabraser may remain as plaintiffs' counsel pursuant to the contingent fee arrangement;

2. Plaintiffs' RICO claims are DISMISSED WITHOUT PREJUDICE;

3. Plaintiffs' fraud and misrepresentation claims are DISMISSED WITHOUT PREJUDICE;

4. Plaintiffs' breach of special duty claims are DISMISSED WITHOUT PREJUDICE;

5. Plaintiffs' breach of implied warranty claim is DISMISSED WITH PREJUDICE, while their breach of express warranty claim is DISMISSED WITHOUT PREJUDICE;

6. Plaintiffs' equitable claims are DISMISSED WITHOUT PREJUDICE;

7. Plaintiffs' conspiracy claims are DISMISSED as an independent cause of action.

An amended complaint in this action must be filed by March 31, 1997.

IT IS SO ORDERED.