113 Cal.Rptr.2d 120 (2001)
93 Cal.App.4th 183
In re TOBACCO CASES II. [Four coordinated cases][*]
No. D035450.
Court of Appeal, Fourth District, Division One.
October 25, 2001.
Rehearing Denied November 19, 2001.
Review Granted June 29, 2002.
*122 Law Offices of Jack R. Ormes and Jack R. Ormes, Pasadena, for Plaintiff and Appellant Operating Engineers Local 12 Health and Welfare Trust Fund.
Cotchett, Pitre & Simon, Joseph W. Cotchett, Marie Seth Weiner and Gwendolyn R. Giblin, Burlingame, for Plaintiffs and Appellants U.A. Local No. 467 Health and Welfare Trust Fund, U.A. Local No. 393 Health and Welfare Trust Fund, and North Coast Trust Fund.
McCarthy, Johnson & Miller and Raphael Shannon, San Francisco, for Plaintiffs and Appellants U.A. Local No. 467 Health and Welfare Trust Fund, and U.A. Local No. 393 Health and Welfare Trust Fund.
Beeson, Tayer & Bodine and Geoffrey Piller, Sacramento, for Plaintiff and Appellant North Coast Trust Fund.
Van Bourg, Weinberg, Roger & Rosenfeld, Los Angeles, Christian L. Raisner, Theodore Franklin, Oakland; Milberg, Weiss, Bershad, Hynes & Lerach LLP, William S. Lerach, Michael Dowd and Frank J. Janecek, Jr., San Diego, for Plaintiff and Appellant Operating Engineers Health and Welfare Trust Fund for Northern California.
Simpson, Thacher & Bartlett, Steven H. Bergman, Los Angeles, Demetra V. Frawley, Mary Elizabeth McGarry; Steefel, Levitt & Weiss, Barry W. Lee and Peter N. Larson, San Francisco, for Defendant and Appellant B.A.T. Industries.
Munger, Tolles & Olson LLP, Gregory P. Stone, Daniel P. Collins, Los Angeles, and Martin D. Bern, San Francisco, for Defendant and Respondent Philip Morris Incorporated.
Howard, Rice, Nemerovski, Canady, Falk & Rabkin and H. Joseph Escher III, San Francisco, for Defendant and Respondent R.J. Reynolds Tobacco Company.
Pillsbury, Madison & Sutro LLP and Anthony R. Delling, Los Angeles, for Defendant and Respondent Brown & Williamson Tobacco Corp (individually and as successor by merger to The American Tobacco Company).
Loeb & Loeb LLP and Daniel G. Murphy, Los Angeles, for Defendant and Respondent The Council for Tobacco ResearchU.S.A., Inc.
Shook, Hardy & Bacon LLP, San Francisco, and Larry R. O'Neal, Kansas City, Mo., for Defendant and Respondent Lorillard Tobacco Company.
Crosby, Heafey, Roach & May, Los Angeles, and Mary C. Oppedahl, Oakland, for Defendant and Respondent The Tobacco Institute, Inc.
Coughlan, Semmer & Lipman, LLP, San Diego, and R.J. Coughlan, Jr. for Defendant *123 and Respondent United States Tobacco Company.
Chadbourne & Parke, LLP and Susan St. Denis, Los Angeles, for Defendant and Respondent British American Tobacco (Investments) Limited.
Krieg, Keller, Sloan, Reilley & Roman and Stanley G. Roman for Defendant and Respondent Hill & Knowlton, Inc.
Segal & Kirby and James R. Kirby II, Sacramento, for Defendant and Respondent Smokeless Tobacco Council, Inc.
The Lendrum Law Firm, Jeffrey P. Lendrum, San Diego; Kasowitz, Benson, Torres & Friedman, LLP and Julie Fischer for Defendant and Respondent Liggett Group, Inc.
*121 KREMER, P.J.
Plaintiffs Operating Engineers Local 12 Health and Welfare Trust Fund (Local 12) et al.[1] (collectively referred to as Plaintiffs) appeal a judgment dismissing their coordinated and consolidated lawsuit for negligent misrepresentation and intentional fraud against defendants Philip Morris Incorporated et al.[2] (collectively referred to as Defendants). Plaintiffs contend the court erred in sustaining without leave to amend Defendants' demurrer to Plaintiffs' claims for negligent misrepresentation. Plaintiffs also contend the court erred in assertedly declining to permit them to pursue intentional fraud claims based upon Defendants' alleged nondisclosure/concealment. We affirm the judgment of dismissal.
Defendant BAT Industries appeals an order denying its motion to quash service of summons, asserting the court should have concluded BAT Industries' contacts with California were insufficient to support personal jurisdiction. We dismiss BAT Industries' appeal as moot.

I

PLAINTIFFS' APPEAL

A

Introduction
For purposes of determining the propriety of the court's rulings on Defendants' demurrers to Plaintiffs' claims for negligent misrepresentation and intentional fraud, we state the material facts properly pleaded by Plaintiffs. (Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4th 26, 38, 77 Cal.Rptr.2d 709, 960 P.2d 513; Blank v. Kirwan (1985) 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58.)
Plaintiffs are California health and welfare trust funds who under collective bargaining agreements provided health, medical and related benefits to union members and their dependents. Defendant United States Tobacco Company dominated the market for smokeless tobacco including snuff and chewing tobacco. The remaining *124 Manufacturing Defendants controlled the United States cigarette market. The Research/Publicizing Defendants conducted research and marketing on behalf of the Manufacturing Defendants.
Defendants were cognizant of the adverse health effects and addictive nature of the tobacco products they were manufacturing, selling, advertising, researching, testing and distributing. Nevertheless, Defendants perpetrated a conspiracy of deceit to hide the truth about those matters and intentionally manipulated the nicotine content of their products to make them more addictive. More particularly, Defendants made misrepresentations to Plaintiffs about the health consequences of smoking and the addictive nature of nicotine. As a result of Defendants' misrepresentations, Plaintiffs did not take steps to dissuade their participants/beneficiaries from smoking. Defendants' misrepresentations also caused an increase in smoking and smoking-related illnesses in some of Plaintiffs' participants/beneficiaries. Plaintiffs were thus required to pay for the medical treatment provided to their participants/beneficiaries who were adversely affected by using Defendants' tobacco products. Plaintiffs' increased payments for medical expenditures caused by Defendants depleted the fixed assets of Plaintiffs' trust funds and diminished the funds available to pay for other benefits for smokers and nonsmokers during the remainder of the terms of the collective bargaining agreements.
In essence, this lawsuit alleged that Defendants' misrepresentations increased Plaintiffs' costs and decreased the corpus of Plaintiffs' trusts. Plaintiffs thus sought to recover from Defendants the economic injuries suffered by Plaintiffs consisting of the depletion of their trust funds' assets. However, the superior court sustained without leave to amend Defendants' demurrer to various plaintiffs' claims for negligent misrepresentation on the ground the derivative economic damages sought were too remote to be actionable. Further, in overruling Defendants' demurrer to various plaintiffs' claims for intentional fraud, the superior court commented that Civil Code[3] former section 1714.45 barred the portions of such claims based upon Defendants' alleged nondisclosure/concealment. Although the superior court did not definitively preclude Plaintiffs from proceeding on their intentional fraud claims, Plaintiffs ultimately chose not to do so.
Moreover, after receiving unfavorable rulings involving matters not at issue on this appeal, Plaintiffs asked the superior court to dismiss this lawsuit. Plaintiffs now appeal the ensuing judgment of dismissal.

B

Discussion of Plaintiffs' Appeal

1

Procedural Background of Plaintiffs' Coordinated/Consolidated Lawsuit

(a)

Proceedings Before Consolidation
In September 1997, plaintiff Local 12 filed a class action lawsuit (Class Action) in Los Angeles County alleging numerous claims against various Defendants.
In March 1998, represented by the law firm of Cotchett, Pitre & Simon (Cotchett), plaintiff Local 467 filed a lawsuit against Defendants in San Mateo County alleging *125 numerous claims including intentional fraud/deceit, negligent misrepresentation and Business and Professions Code violations.
In July 1998, in the Class Action, the Los Angeles court sustained various Defendants' demurrers to all claims in Local 12's first amended complaint but granted leave to amend with respect to its claims for intentional fraud, civil conspiracy and Business and Professions Code violations. In doing so, the court stated that section 1714.45, as amended effective January 1, 1998, did not bar Local 12's claims.

(b)

Creation of Coordination Proceedings
In August 1998, Local 12's Class Action, Local 467's lawsuit and eight similar complaints filed by Cotchett-represented plaintiffs were ordered coordinated.
In December 1998, the coordination trial judge added to the coordination proceedings similar complaints filed between April and September 1998 by 15 more Cotchett-represented plaintiffs including Local 393 and North Coast.

(c)

The Controverted Postcoordination Demurrers
In December 1998, various Defendants jointly demurred to the intentional fraud and conspiracy claims of the second amended complaint in Local 12's Class Action. However, in light of the Los Angeles court's earlier ruling that amended section 1714.45 did not bar Local 12's claims, the demurring Defendants in December 1998 did not raise the issue whether such statute applied to bar the intentional fraud claim in Local 12's second amended complaint. In December 1998, various Defendants also filed a consolidated joint demurrer to the complaints of the 24 Cotchett-represented plaintiffs.
In March/April 1999, in Local 12's Class Action, the court overruled Defendants' demurrer to the second amended complaint's claims for intentional fraud and civil conspiracy. At the same time, the court sustained without leave to amend Defendants' demurrer to the Cotchett-represented plaintiffs' claims for negligent misrepresentation on the ground that the alleged derivative economic damages were too remote to be actionable. However, the court overruled Defendants' demurrer to the Cotchett-represented plaintiffs' remaining claims for intentional fraud and Business and Professions Code violations. Further, although overruling Defendants' demurrer to those plaintiffs' intentional fraud claims, the court commented that despite not barring the portions of those claims based upon Defendants' alleged affirmative misrepresentations, former section 1714.45 barred the portions of such claims based upon Defendants' alleged nondisclosure/concealment. Additionally, the court concluded that the amendments to section 1714.45 effective January 1, 1998, were not retroactive and, thus, Plaintiffs were bound by the preamendment version of such statute.
Accordingly, after the court's March/April 1999 rulings on Defendants' demurrers, Plaintiffs' only remaining claims were for intentional fraud and Business and Professions Code violations. Following such rulings, the Cotchett-represented plaintiffs filed amended complaints retaining their earlier allegations of intentional fraud based upon Defendants' nondisclosure/concealment.

*126 (d)

Consolidation and Intervention into Class Action
In July 1999, the superior court granted OENC's motion to intervene in the Class Action. OENC's complaint-in-intervention alleged claims for "fraud: concealment and misrepresentation," civil conspiracy, and Business and Professions Code violations. On the same date, the court granted the motion of Cotchett-represented plaintiffs Local 467, Local 393 and North Coast to consolidate their coordinated actions with Local 12's Class Action and to permit those plaintiffs to intervene in such Class Action as named class representatives. The remaining 21 Cotchett-represented plaintiffs dismissed their individual actions and continued to litigate their claims as absent class members in the Class Action.

(e)

Plaintiffs Abandon Their Intentional Fraud Claims
Later in July 1999, apparently believing they would not succeed in obtaining class certification for the portions of their intentional fraud claims based upon Defendants' alleged affirmative misrepresentations, the Cotchett-represented plaintiffs voluntarily dismissed without prejudice their claims for "fraud and deceit" against all Defendants.
In August 1999, interveners Local 467, Local 393, North Coast and OENC filed a consolidated class action complaint separate from the complaint in Local 12's Class Action. Unlike Local 12's then-operative third amended complaint, the interveners' class action complaint did not contain a claim for fraud but instead alleged only Business and Professions Code violations.
In September 1999, consistent with the court's order on Defendants' objection to the existence of two competing complaints representing the claims of the same class, Local 12 and the interveners filed in Local 12's Class Action a single consolidated class action complaint (entitled the fourth amended complaint of Local 12 and the consolidated complaint in intervention of Local 467, Local 393, North Coast and OENC). Such consolidated class action complaint eliminated all fraud claims and alleged only Business and Professions Code violations.

(f)

Plaintiffs Dismiss Their Class Action
In March 2000, the superior court summarily adjudicated that the monetary relief sought by Plaintiffs on their claims for Business and Professions Code violations constituted compensatory damages that were not statutorily recoverable. Further, although stating Plaintiffs could proceed on claims for injunctive relief, the court limited such claims to wrongful conduct specifically targeted to each such plaintiff. Additionally, the court indicated it would not be inclined to grant any injunctive relief without a trial or other comprehensive showing on the merits. Thus, apparently unwilling to undertake the time and expense of litigating and conducting discovery simply to obtain limited injunctive relief, Plaintiffs asked the superior court to dismiss this Class Action lawsuit with prejudice. (Code Civ. Proc., § 581d.) Defendants did not oppose entry of a dismissal.
In April 2000 in accord with Plaintiffs' request, the superior court entered judgment dismissing with prejudice this Class Action lawsuit, "including all class actions and individual actions which are a part thereof, by consolidation, intervention or otherwise."

*127 2

Analysis of Court Rulings on Defendants' Demurrers
Seeking reversal of the judgment dismissing this lawsuit, Plaintiffs contend the superior court erred in sustaining without leave to amend Defendants' demurrer to their negligent misrepresentation claims.[4] Plaintiffs also contend the court erred in assertedly concluding that former section 1714.45 barred the portions of their intentional fraud claims based upon Defendants' alleged nondisclosure/concealment.[5] However, concluding Plaintiffs have not demonstrated reversible judicial error, we affirm the judgment in its entirety.

(a)

Plaintiffs' Claims for Negligent Misrepresentation
In December 1998 in the coordination proceeding, Defendants filed a consolidated joint demurrer to the negligent misrepresentation claims in the complaints of the 24 Cotchett-represented plaintiffs, including Local 467, Local 393 and North Coast. In March 1999, the superior court sustained such demurrer without leave to *128 amend on the ground that under the judicially developed doctrine of "derivative injury preclusion" or "remoteness," the derivative economic damages alleged by those plaintiffs were too remote to be actionable. In doing so, the superior court characterized negligent misrepresentation as "a species of negligence."
Asserting the Cotchett-represented plaintiffs adequately pleaded the material factual elements of a cause of action for negligent misrepresentation under California law,[6] Plaintiffs contend the superior court reversibly erred in sustaining without leave to amend Defendants' demurrer to those plaintiffs' negligent misrepresentation claims. Specifically, Plaintiffs contend the remoteness doctrine is inapplicable to negligent misrepresentation claims because California law assertedly classifies the tort of negligent misrepresentation as a form of deceit, not as a species of negligence. (§§ 1709-1710.)[7] Plaintiffs also contend the Cotchett-represented plaintiffs' alleged economic damages were not so derivative as to be nonactionable under California law. More particularly, Plaintiffs contend those plaintiffs sustained economic losses resulting directly from Defendants' misrepresentations that were targeted to causing economic harm to such plaintiffs as part of Defendants'"intentional effort to shift to Plaintiffs and other benefit providers the economic costs arising from the detrimental use of Defendants' tobacco products." However, as we shall explain, the superior court properly concluded that under California law, such derivative negligent misrepresentation claims were barred as too remote.
In essence, the Cotchett-represented plaintiffs' negligent misrepresentation claims sought to recover economic damages allegedly caused directly by Defendants' wrongful conduct and consisting of the health care expenses paid by those plaintiffs' trust funds for the treatment of such plaintiffs' participants/beneficiaries' tobacco-related illnesses. However, California case law recognizes that the remoteness doctrine generally applies to bar negligence-based claims seeking recovery of damages from defendants who injure third parties for whom various types of plaintiffs ultimately foot the bills. (See, e.g., Fifield Manor v. Finston (1960) 54 Cal.2d 632, 7 Cal.Rptr. 377, 354 P.2d 1073;[8]I.J. Weinrot *129 & Son, Inc. v. Jackson (1985) 40 Cal.3d 327, 220 Cal.Rptr. 103, 708 P.2d 682;[9]Fischl v. Poller & Goldstein (1991) 231 Cal.App.3d 1299, 282 Cal.Rptr. 802;[10]Herrick v. Superior Court (1987) 188 Cal. App.3d 787, 233 Cal.Rptr. 675.[11]) "[Considerations militating against imposing liability in the negligence context" include "the often mentioned fear of unlimited liability for economic consequences." (Herrick v. Superior Court, supra, at p. 792, 233 Cal.Rptr. 675; cf. Evan F. v. Hughson United Methodist Church (1992) 8 Cal. App.4th 828, 835, 10 Cal.Rptr.2d 748;[12] see Holmes v. Securities Investor Protection Corporation (1992) 503 U.S. 258, 268-269, *130 112 S.Ct. 1311, 117 L.Ed.2d 532.[13]) Although effectively acknowledging that under California law the remoteness doctrine generally applies to bar negligence-based claims, Plaintiffs contend those California cases are distinguishable as not involving statutory deceit claims for negligent misrepresentation. (§§ 1709-1710.) In that vein, Plaintiffs appear to assert that as a form of statutory deceit, negligent misrepresentation is something akin to an intentional tort rather than simply a species of negligence.[14] However, contrary to Plaintiffs' contention, for purposes of application of the remoteness doctrine, the Cotchett-represented plaintiffs' negligent misrepresentation claims must be treated as alleging torts sounding in negligence.
As Plaintiffs effectively acknowledge, although section 1710 defines both intentional fraud and negligent misrepresentation as deceit, those two torts involve fundamentally different state of mind requirements. The material elements of a cause of action for intentional fraud include the defendant's intent to deceive and the defendant's scienter, to wit, knowledge of the falsity of the statement made. (Charpentier v. Los Angeles Rams Football Co. (1999) 75 Cal.App.4th 301, 312, 89 Cal.Rptr.2d 115; City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (1998) 68 Cal.App.4th 445, 481, 482, 80 Cal.Rptr.2d 329; Anderson v. Deloitte & Touche (1997) 56 Cal.App.4th 1468, 1474, 66 Cal.Rptr.2d 512; Black v. Shearson, Hammill & Co. (1968) 266 Cal.App.2d 362, 367, 72 Cal.Rptr. 157.) However, neither scienter nor the intent to deceive "`is a requisite of negligent misrepresentation.'" (Anderson v. Deloitte & Touche, supra, at p. 1476, 66 Cal.Rptr.2d 512; see Gagne v. Bertran (1954) 43 Cal.2d 481, 487-488, 275 P.2d 15 & fns. 4-5; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 722, p. 821.) Instead, a "cause of action for negligent misrepresentation requires only a showing of negligence." (Schneider v. Vennard (1986) 183 Cal.App.3d 1340, 1348, 228 Cal.Rptr. 800; accord, City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra, at p. 482, 80 Cal. Rptr.2d 329;[15]Ventura County Nat. Bank v. Macker (1996) 49 Cal.App.4th 1528, 1531, 57 Cal.Rptr.2d 418.[16])
*131 In essence, the remoteness doctrine directs courts in negligence cases to cut off liability to plaintiffs other than the direct victim because negligently caused harm is not intended. (E.g., Herrick v. Superior Court, supra, 188 Cal.App.3d at p. 793, 233 Cal.Rptr. 675.)[17] Since the tort of negligent misrepresentation does not require an intentional conscious misrepresentation but instead may be supported by "acts of negligence" (Ventura County Nat. Bank v. Mocker, supra, 49 Cal.App.4th at p. 1531, 57 Cal.Rptr.2d 418), the superior court properly characterized the Cotchett-represented plaintiffs' negligent misrepresentation claims as a species of negligence. Hence, despite Plaintiffs' argument that Defendants' tort of negligent misrepresentation was directed at the Cotchett-represented plaintiffs' trust funds and that those plaintiffs sought to recover for their own economic damages rather than for a remote injury, the pleadings clearly requested recovery for alleged economic injuries that were entirely derivative of the injuries suffered by third party smokers who were participants/beneficiaries under such plaintiffs' trust funds. As such, the Cotchett-represented plaintiffs' negligent misrepresentation claims were plainly barred under California's remoteness doctrine. (I.J. Weinrot & Son, Inc. v. Jackson, supra, 40 Cal.3d at p. 332, 220 Cal.Rptr. 103, 708 P.2d 682; Fifield Manor v. Finston, supra, 54 Cal.2d at pp. 634, 636-637, 7 Cal.Rptr. 377, 354 P.2d 1073; Fischl v. Poller & Goldstein, supra, 231 Cal.App.3d at pp. 1301, 1303, 282 Cal.Rptr. 802; Herrick v. Superior Court, supra, 188 Cal.App.3d at p. 789, 233 Cal.Rptr. 675.)
In sum, we conclude the superior court properly sustained Defendants' demurrer to the Cotchett-represented plaintiffs' negligent misrepresentation claims because under California law such claims impermissibly sought damages for derivative injuries that were too remote. Specifically, with respect to those claims for negligent misrepresentation, such plaintiffs' alleged injuries were wholly derivative of the alleged injuries caused to individual *132 smokers by tobacco products. A party who has paid the medical expenses of a tortiously injured person may not bring a direct action against a negligent tortfeasor to recover for those expenses or any related economic harm. (Fifield Manor v. Finston, supra, 54 Cal.2d at pp. 636-637, 7 Cal.Rptr. 377, 354 P.2d 1073; see also I.J. Weinrot & Son, Inc. v. Jackson, supra, 40 Cal.3d at p. 341, 220 Cal.Rptr. 103, 708 P.2d 682.) Accordingly, we do not disturb the court's order sustaining without leave to amend Defendants' demurrer to the Cotchett-represented plaintiffs' claims for negligent misrepresentation.

(b)

Plaintiffs' Claims for Intentional Fraud
As noted, in December 1998 in the coordination proceedings, various Defendants jointly demurred to the intentional fraud claim of the second amended complaint in Local 12's Class Action. However, because the Los Angeles court had earlier stated that amended section 1714.45 did not bar such claim, Defendants' demurrer to Local 12's second amended complaint's intentional fraud claim did not raise the issue whether section 1714.45 applied to bar such claim. Defendants also filed a consolidated joint demurrer to the complaints of the 24 Cotchett-represented plaintiffs.
As also noted, in March/April 1999 in Local 12's Class Action, the superior court overruled Defendants' demurrer to the second amended complaint's claim for intentional fraud. At the same time, the court also overruled Defendants' demurrer to the Cotchett-represented plaintiffs' remaining claims for intentional fraud and Business and Professions Code violations. However, although overruling Defendants' demurrer to the Cotchett-represented plaintiffs' intentional fraud claims, the court commented that despite not barring the portions of those claims based upon Defendants' alleged affirmative misrepresentations, former section 1714.45 barred the portions of such claims based upon Defendants' alleged nondisclosure/concealment. Further, the court concluded that the amendments to section 1714.45 effective January 1, 1998, were not retroactive and Plaintiffs were thus bound by the preamendment version of such statute.
Asserting former section 1714.45 expressly applied only to "a product liability action" as defined in that statute, Plaintiffs contend the superior court reversibly erred in assertedly ruling that as a matter of law such statute barred the Cotchett-represented plaintiffs from prosecuting the portions of their intentional fraud claims based upon Defendants' alleged nondisclosure/concealment. However, as we shall explain, by abandoning their intentional fraud claims in the superior court, Plaintiffs have not preserved for appeal the issue of former section 1714.45's applicability to the portions of such claims based upon nondisclosure/concealment. Further, even if we were to deem Plaintiffs' appellate contentions involving the portions of the fraud claims based upon nondisclosure/concealment not to have been waived, we would nonetheless conclude the superior court could properly have determined that former section 1714.45 barred those portions of such claims.

(1)

Plaintiffs Have Waived Appellate Attack Involving Intentional Fraud Claims
Concluding former section 1714.45 did not bar the entirety of the intentional fraud claims alleged by the Cotchett-represented plaintiffs, the superior court overruled Defendants' demurrer to those claims. Following such ruling, the Cotchett-represented plaintiffs filed amended *133 complaints retaining their earlier allegations of intentional fraud based upon Defendants' alleged nondisclosure/concealment. Later, apparently believing they would not succeed in obtaining class certification for the portions of their intentional fraud claims based upon Defendants' alleged affirmative misrepresentations, the Cotchett-represented plaintiffs voluntarily dismissed such claims without prejudice. By dismissing the entirety of their intentional fraud claims to which the court had overruled Defendants' demurrer, Plaintiffs waived any claim of error involving the portions of such claims based upon affirmative misrepresentation and, indeed, appear not to assert any error involving those portions of their claims. However, by dismissing the entirety of those intentional fraud claims to which the court had overruled the demurrer, Plaintiffs have also waived any claim of error involving the portions of such claims based upon Defendants' alleged nondisclosure/concealment. (Wells v. Marina City Properties, Inc. (1981) 29 Cal.3d 781, 787, 176 Cal. Rptr. 104, 632 P.2d 217; Yancey v. Fink (1991) 226 Cal.App.3d 1334, 1343, 277 Cal. Rptr. 415; 6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 274, pp. 693-694.)
First, although commenting that former section 1714.45 barred the portions of the Cotchett-represented plaintiffs' intentional fraud claims based upon Defendants' alleged nondisclosure/concealment, the superior court nevertheless overruled Defendants' demurrer to those claims because it concluded the statute did not bar the entirety of such claims. Since a "demurrer does not lie to a portion of a cause of action" (PH II, Inc. v. Superior Court (1995) 33 Cal.App.4th 1680, 1682;, 40 Cal. Rptr.2d 169 5 Witkin, Cal. Procedure, supra, Pleading, § 910, p. 370), the Cotchett-represented Plaintiffs thus prevailed on the only matter before the lower court, to wit, whether to sustain Defendants' demurrer. Plaintiffs may not appeal the court's favorable ruling overruling the demurrer, the only order entered by the court. (Code Civ. Proc., § 902; Marsh v. Mountain Zephyr, Inc., supra, 43 Cal. App.4th at p. 295, 50 Cal.Rptr.2d 493.)
Further, contrary to Plaintiffs' contention, the superior court did not issue any order making a definitive determination adverse to the Cotchett-represented plaintiffs on the portions of their intentional fraud claims based upon Defendants' alleged nondisclosure/concealment. Instead, the court's comments about former section 1714.45's applicability to those portions of such claims were at most preliminary, with any definitive ruling on the statute's application awaiting additional litigation by motion to strike, motion in limine or otherwise. (Cf. In re Marriage of Griffin (1993) 15 Cal.App.4th 685, 689, 19 Cal. Rptr.2d 94.) In that vein, the court's comments did not necessarily preclude the Cotchett-represented Plaintiffs from later prevailing on issues bearing on the nondisclosure/concealment portions of their intentional fraud claims. Moreover, contrary to Plaintiffs' contention, the court's preliminary ruling about such portions of the Cotchett-represented plaintiffs' intentional fraud claims did not merge automatically into the ultimate judgment of dismissal. Instead, Code of Civil Procedure section 472c, subdivision (b)(1), left "open on appeal" [18] from the final judgment only those rulings that sustained a demurrer to an entire cause of action/affirmative defense or granted a motion to *134 strike a portion of a pleading. Since the court's preliminary ruling on the Cotchett-represented plaintiffs' intentional fraud claims did neither, such ruling did not come within the savings provisions of Code of Civil Procedure section 472c, subdivision (b)(1).
Undaunted, Plaintiffs apparently contend the superior court's comments about former section 1714.45's barring the portions of the Cotchett-represented plaintiffs' intentional fraud claims based upon Defendants' alleged nondisclosure/concealment effectively struck those portions from the pleadings. However, the record does not contain any court order purporting to strike such portions of those plaintiffs' intentional fraud claims. Further, following the court's now-challenged comments, the Cotchett-represented plaintiffs proceeded to file amended complaints that did not delete any of their earlier allegations of intentional fraud based upon nondisclosure/concealment. Moreover, the nondisclosure/concealment allegations remained in those plaintiffs' pleadings until such plaintiffs voluntarily dismissed their intentional fraud claims in the apparent belief they would not succeed in obtaining class certification for the affirmative misrepresentation portions of claims.
Additionally, after the Cotchett-represented plaintiffs voluntarily dismissed their intentional fraud claims, intervener OENC and Cotchett-represented interveners (Local 467, Local 393 and North Coast) filed a consolidated class action complaint that, unlike the separate and still operative third amended complaint in Local 12's Class Action, contained no claim for intentional fraud. Soon afterward, as ordered by the court, Local 12 and the interveners filed a single consolidated class action complaint in Local 12's Class Action. However, such single consolidated class action complaint eliminated all intentional fraud claims. Ultimately, after unfavorable rulings on their remaining claims for Business and Professions Code violations, Plaintiffs asked the court to dismiss the Class Action with prejudice. Since Plaintiffs voluntarily abandoned in the superior court the entirety of their intentional fraud claims including the portions based upon Defendants' alleged nondisclosure/concealment, such portions of those claims may not be revived on appeal. (Carmichael v. Reitz (1971) 17 Cal.App.3d 958, 969, 95 Cal.Rptr. 381 ["one cannot raise on appeal material issues which he abandons at the trial level as a matter of strategy and purely for his own advantage"].)
Finally, we find unavailing Plaintiffs' reliance on Building Industry Assn. v. City of Camarillo (1986) 41 Cal.3d 810, 226 Cal.Rptr. 81, 718 P.2d 68. In that case, the Supreme Court observed that "there is an exception to the rule that a party may not appeal a consent judgment. If the consent was merely given to facilitate an appeal following adverse determination of a critical issue, the party will not lose his right to be heard on appeal." (Id. at p. 817, 226 Cal.Rptr. 81, 718 P.2d 68.)[19] However, unlike the situation in that case, this record contains no stipulation by the parties to the entry of a consent judgment favoring Defendants for the sole purpose of perfecting an appeal. (Id. at pp. 815 817, 226 Cal.Rptr. 81, 718 P.2d 68; see Norgart v. Upjohn Co. (1999) 21 Cal.4th 383, 399-02, 87 Cal.Rptr.2d 453, 981 P.2d 79; Huntley v. Foster (1995) 35 Cal. App.4th 753, 755, 41 Cal.Rptr.2d 358; *135 Dong v. Board of Trustees (1987) 191 Cal. App.3d 1572, 1576-1577, 236 Cal.Rptr. 912.) Instead, Plaintiffs simply dismissed their intentional fraud claims. Further, contrary to Plaintiffs' contention, at the time of such dismissal the nondisclosure/concealment portions of the Cotchett-represented plaintiffs' intentional fraud claims had not been "lost on demurrer." Rather, those portions of such claims remained in Plaintiffs' pleadings and had not been stricken by the court or otherwise definitively adjudicated against Plaintiffs.
In sum, on this record we deem waived Plaintiffs' appellate attack involving the portions of the intentional fraud claims based upon nondisclosure/concealment.

(2)

Former Section 1714.45 Barred Portions of Intentional Fraud Claims Based on Nondisclosure/Concealment Theory
Even if we were to deem Plaintiffs' appellate contentions involving the portions of the Cotchett-represented plaintiffs' intentional fraud claims based upon Defendants' alleged nondisclosure/concealment not to have been waived, the result would not differ because the superior court could have properly concluded those portions of such claims were barred by former section 1714.45.[20]

(i)

Applicability of Former Statute
Former section 1714.45 was enacted as part of a compromise "between parties seeking and opposing comprehensive changes in California tort law who had been locked in a long political struggle that had reached stalemate." (American Tobacco Co. v. Superior Court (1989) 208 Cal.App.3d 480, 486, 255 Cal.Rptr. 280; see Richards v. Owens Illinois, Inc. (1997) 14 Cal.4th 985, 998-999, 60 Cal.Rptr.2d 103, 928 P.2d 1181.) In American Tobacco Co. v. Superior Court, the appellate court concluded former section 1714.45 precluded "the maintenance of plaintiffs' actions for damages due to injuries or death allegedly resulting from the use" of the defendant manufacturers'"tobacco products." (Id, at p. 484, 255 Cal.Rptr. 280.) In doing so, the appellate court observed: "It was commonly understood that the measure embodying [former] section 1714.45, which enjoyed the active or at least tacit support of all these groups, would provide nearly complete immunity for manufacturers of the five enumerated products." (Id, at p. 487, 255 Cal.Rptr. 280.) The appellate court also observed that the "evidence very strongly indicates that the Legislature intended to immunize manufacturers of sugar, castor oil, alcohol, tobacco and butter from product liability suits." (Ibid.) The appellate court further observed that *136 the former statute as a whole provided "automatic immunity for manufacturers of the enumerated consumer products." (Id. at p. 489, 255 Cal.Rptr. 280.)
Similarly, in Richards v. Owens Illinois, Inc., supra, 14 Cal.4th 985, 60 Cal.Rptr.2d 103, 928 P.2d 1181, the Supreme Court stated former section 1714.45 represented "a legislative judgment that to the extent of the immunity afforded," suppliers of "certain unhealthy consumer products such as tobacco" "have no `fault' or responsibility, in the legal sense, for harm caused by their products." (Id. at p. 989, 60 Cal.Rptr.2d 103, 928 P.2d 1181; accord, Rutherford v. Owens Illinois, Inc. (1997) 16 Cal.4th 953, 959, 67 Cal.Rptr.2d 16, 941 P.2d 1203.) Stated otherwise, "under the conditions described by [former] section 1714.45, a tobacco supplier simply commits no tort against knowing and voluntary smokers by making cigarettes available for their use." (Richards v. Owens Illinois, Inc., supra, at p. 1000, 60 Cal.Rptr.2d 103, 928P.2d 1181.)[21]
Despite such case law recognizing the broad immunity accorded by former section 1714.45, Plaintiffs nevertheless contend the superior court erred in assertedly holding that such statute barred the portions of the Cotchett-represented plaintiffs' intentional fraud claims based upon Defendants' alleged nondisclosure/concealment. In asserting former section 1714.45 did not apply to those claims, Plaintiffs rely on the common law differences between tort actions based upon strict liability for defective products and those based upon fraud. Specifically, asserting that possible theories of recovery in products liability cases "include strict liability in tort, negligence (i.e., in creating or failing to discover a flaw, in failing to warn or failing adequately to warn, or in the sale of a defectively designed product), and breach of warranty (express and implied)" and that those theories require proof that the product "malfunctioned," Plaintiffs conclude the Cotchett-represented plaintiffs' tort claims alleging deceit-based theories were distinct from claims based upon product defects. (Khan v. Shiley Inc. (1990) 217 Cal.App.3d 848, 855, 266 Cal. Rptr. 106.) Further, asserting they did not buy or use tobacco products, Plaintiffs also contend the Cotchett-represented plaintiffs' claims sought recovery of those plaintiffs' economic losses based upon Defendants' conspiracy to hide the truth and thus did not constitute claims for "injury or death caused by a product" within the meaning of former section 1714.45.
In essence, Plaintiffs contend the Cotchett-represented plaintiffs' intentional fraud claims did not constitute product liability actions under either common law *137 or former section 1714.45. However, for purposes of interpreting former section 1714.45, Plaintiffs' reliance on the common law differences between strict products liability and fraud is unavailing. Regardless of those common law differences, former section 1714.45 by its own terms applied to lawsuits coming within its express legislatively-created definition of "product liability action," to wit, "any action for injury or death caused by a product." (Id., subd. (b).) Further, former section 1714.45 specified only two exceptions to its broad definition, namely, actions "based on a manufacturing defect or breach of an express warranty." (Ibid.) Thus, for purposes of former section 1714.45, "`product liability action'" included not only traditional common law actions based upon strict liability theories but also, with two narrow specified exceptions, included any action whatsoever "for injury or death caused by a product."
Undaunted, Plaintiffs contend the Cotchett-represented plaintiffs' intentional fraud claims did not constitute actions for "injury or death caused by a product" under the language of former section 1714.45. Specifically, Plaintiffs characterize those claims as seeking recovery of damages not for "injury or death" caused by Defendants' tobacco products, but instead for the Cotchett-represented plaintiffs' economic losses caused by Defendants' fraudulent deception of such "nonperson" plaintiffs. However, as ultimately based on allegations of "injury or death caused by a product," those plaintiffs' intentional fraud claims constituted "`product liability action[s]'" under the language of former section 1714.45. More particularly, those claims sought damages consisting of medical expenses paid from such plaintiffs' trust funds that were incurred precisely because their participants/beneficiaries suffered "injury or death caused by a [tobacco] product." (Id., subd. (b).) Hence, the Cotchett-represented plaintiffs' intentional fraud claims plainly came within the "nearly complete immunity" accorded to tobacco manufacturers by former section 1714.45. (American Tobacco Co. v. Superior Court, supra, 208 Cal.App.3d at p. 487, 255 Cal.Rptr. 280.)[22]

(ii)

Nonretroactivity of Amended Statute
Section 1714.45 was amended effective January 1, 1998.[23] Amended section 1714.45 no longer included tobacco on its *138 list of "inherently unsafe" products whose manufacturers or sellers were immunized from liability. (Id., subd. (a)(1), (2).) Amended section 1714.45 also expressly provided that it did not exempt the manufacture or sale of tobacco products by tobacco manufacturers and their successors in interest from product liability actions. (Id., subd. (b).)
The superior court commented that amended section 1714.45 was not retroactive and, thus, the immunity language of the former version of such statute applied to the portions of the Cotchett-represented plaintiffs' intentional fraud claims based upon Defendants' alleged nondisclosure/concealment. Asserting amended section 1714.45 applied retroactively to this lawsuit, Plaintiffs contend we must reverse the superior court's purported ruling that such portions of those fraud claims were statutorily barred. However, we conclude amended section 1714.45 was not retroactive.[24]
In Evangelatos v. Superior Court (1988) 44 Cal.3d 1188, 246 Cal.Rptr. 629, 753 P.2d 585, the Supreme Court observed that "application of a tort reform statute to a cause of action which arose prior to the effective date of the statute but which is tried after the statute's effective date would constitute a retroactive application of the statute." (Id. at p. 1206, 246 Cal.Rptr. 629, 753 P.2d 585.) The Supreme Court has also observed that where, as here, a substantial statutory defense existed at the time a plaintiffs injury occurred, application of a subsequent statutory amendment to eliminate that defense in the plaintiffs action for damages would give the amendment retroactive effect. (Morris v. Pacific Electric Ry. Co. (1935) 2 Cal.2d 764, 767-769, 43 P.2d 276.) Further, under California law, statutes operate *139 prospectively absent a clear indication that the Legislature intended retroactive application. (§ 3; Western Security Bank v. Superior Court (1997) 15 Cal.4th 232, 243, 62 Cal.Rptr.2d 243, 933 P.2d 507; Evangelatos v. Superior Court, supra, at pp. 1207-1210, 246 Cal.Rptr. 629, 753 P.2d 585.) However, no such clear indication appears with respect to amended section 1714.45. Although Plaintiffs contend that by its own terms subdivision (f) of amended section 1714.45 expressly contemplated application of the amended statute to past, present and future claims, we find nothing in such subdivision unmistakably expressing any legislative intent that the amended statute be applied retroactively. Hence, we conclude the amendment to section 1714.45 that was effective January 1, 1998, and that repealed former section 1714.45 may not be applied retroactively because the Legislature did not unequivocally declare such amendment to be retroactive. (Evangelatos v. Superior Court, supra, at p. 1206, 246 Cal.Rptr. 629, 753 P.2d 585; Morris v. Pacific Electric Ry. Co., supra, at pp. 767-769, 43 P.2d 276.) Accordingly, the superior court could properly have concluded that former section 1714.45, not the amended version of such statute, applied here and barred the portions of the Cotchett-represented plaintiffs' intentional fraud claims based upon Defendants' alleged nondisclosure/concealment.[25]

(c)

Conclusion on Plaintiffs' Appeal
Since Plaintiffs have not shown any reversible judicial error with respect to the judgment dismissing their lawsuit, such judgment must be affirmed.

II

BAT INDUSTRIES' APPEAL
BAT Industries contends the superior court reversibly erred in denying its motion to quash service of summons for lack of personal jurisdiction. More particularly, BAT Industries contends the court erred in concluding California's exercise of jurisdiction over BAT Industries based upon an agency theory was constitutionally permissible. However, since the ultimate judgment dismissing Plaintiffs' lawsuit was proper, the court's earlier order denying BAT Industries' motion to quash is without adverse precedential effect upon BAT Industries. (See 7 Witkin, Cal. Procedure, supra, Judgment, § 306, p. 856.) Hence, BAT Industries cannot demonstrate it is an aggrieved party for purposes of entitlement to appeal. (Code Civ. Proc., § 902; County of Alameda v. Carleson (1971) 5 Cal.3d 730, 737, 97 Cal.Rptr. 385, 488 P.2d 953; Marsh v. Mountain Zephyr, Inc., supra, 43 Cal.App.4th at p. 295, 50 Cal. Rptr.2d 493; Cook v. Stewart McKee & Co. (1945) 68 Cal.App.2d 758, 762, 157 P.2d 868; 9 Witkin, Cal. Procedure, supra, Appeal, §§ 181, 188, pp. 237-238, 243-244; 6 Witkin, Cal. Procedure, supra, Proceedings Without Trial, § 274, pp. 693-694; 2 Witkin, Cal. Procedure, supra, Jurisdiction, § 215, pp. 779-780.) Accordingly, BAT Industries' appeal must be dismissed as moot.

III

DISPOSITION
The judgment dismissing plaintiffs' lawsuit is affirmed with defendants entitled to *140 costs on plaintiffs' appeal. The appeal by defendant BAT Industries is dismissed with the parties to bear their own costs on BAT Industries' appeal.
WE CONCUR: HALLER, J. and McDONALD, J.
NOTES
[*] Operating Engineers Local 12 Health and Welfare Trust Fund v. American Tobacco Co., Inc. (L.A. County Super. Ct. No. BC 177968); U.A. Local No. 467 Health and Welfare Trust Fund v. Philip Morris, Inc. (San Mateo County Super. Ct. No. 404308); U.A. Local 393 Health and Welfare Trust Fund v. Philip Morris, Inc. (Alameda County Super. Ct. No. 798474-3); North Coast Trust Fund v. Philip Morris, Inc. (S.F. County Super. Ct. No. 994575).
[1] Other plaintiffs are U.A. Local No. 467 Health and Welfare Trust Fund (Local 467); U.A. Local No. 393 Health and Welfare Trust Fund (Local 393); North Coast Trust Fund (North Coast); and Operating Engineers Health and Welfare Trust Fund for Northern California (OENC).
[2] Other defendants, referred to collectively with Philip Morris Incorporated as the Manufacturing Defendants, are R.J. Reynolds Tobacco Company; Brown & Williamson Tobacco Corp. (individually and as successor by merger to The American Tobacco Company); Lorillard Tobacco Company; Liggett Group, Inc.; and United States Tobacco Company.

Additional defendants, referred to collectively as the Research/Publicizing Defendants, are B.A.T. Industries P.L.C. (BAT Industries); British American Tobacco (Investments) Limited; The Tobacco Institute, Inc.; The Council for Tobacco ResearchU.S.A., Inc.; Hill & Knowlton, Inc.; and Smokeless Tobacco Council, Inc.
[3] All further statutory references are to the Civil Code unless otherwise specified.
[4] Local 12's original, first amended and second amended complaints in its Class Action contained no claims for negligent misrepresentation. Similarly, intervening plaintiff OENC did not assert any negligent misrepresentation claim. Based upon those circumstances, Defendants contend neither Local 12 nor OENC is an aggrieved party entitled to appeal the portion of the March/April 1999 order sustaining Defendants' demurrer to the Cotchett-represented plaintiffs' negligent misrepresentation claims. (Code Civ. Proc., § 902; Marsh v. Mountain Zephyr, Inc. (1996) 43 Cal.App.4th 289, 295, 50 Cal.Rptr.2d 493 [for a person to be "sufficiently `aggrieved' to qualify for appeal standing," the "person's rights or interests must be injuriously affected by the judgment or order"].) Defendants also contend OENC was not aggrieved by the March/April 1999 order that was made before OENC became a party of record to this lawsuit. (Hospital Council of Northern Cal. v. Superior Court (1973) 30 Cal.App.3d 331, 336, 106 Cal.Rptr. 247 [generally "an intervener takes a suit as he finds it"].)

In reply, Plaintiffs contend Local 12 and OENC have standing to challenge the order sustaining the demurrer to the Cotchett-represented plaintiffs' negligent misrepresentation claims because these cases were coordinated and consolidated for all purposes. However, in light of our conclusion that the judgment should be affirmed in its entirety, we need not reach the issue of the appellate standing of Local 12 or OENC with respect to the negligent misrepresentation claims.
[5] In sustaining with leave to amend Defendants' demurrer to the intentional fraud claim in the first amended complaint in Local 12's Class Action, the Los Angeles court stated amended section 1714.45 did not bar such claim. In light of that earlier ruling by the Los Angeles court, Defendants' demurrer to the intentional fraud claim in Local 12's second amended complaint did not raise the issue whether section 1714.45 applied to bar such claim. Ultimately, the coordination court overruled Defendants' demurrer to Local 12's second amended complaint's claim for intentional fraud and conspiracy.

Based upon those circumstances, Defendants contend Local 12 is not an aggrieved party entitled to appeal the portion of the March/April 1999 order bearing on Defendants' demurrer to the Cotchett-represented plaintiffs' intentional fraud claims. (Code Civ. Proc., § 902; Marsh v. Mountain Zephyr, Inc., supra, 43 Cal.App.4th at p. 295, 50 Cal. Rptr.2d 493.) Defendants also contend intervening plaintiff OENC was not aggrieved by the March/April 1999 order that was made before OENC became a party of record to this lawsuit. (Hospital Council of Northern Cal. v. Superior Court, supra, 30 Cal.App.3d at p. 336, 106 Cal.Rptr. 247.)
In reply, Plaintiffs contend Local 12 and OENC have standing to challenge the March/ April 1999 order bearing on Defendants' demurrer to the Cotchett-represented plaintiffs' intentional fraud claims because these cases were coordinated and consolidated for all purposes. However, in light of our conclusion that the judgment should be affirmed in its entirety, we need not reach the issue of the appellate standing of Local 12 or OENC with respect to the intentional fraud claims.
[6] "Negligent misrepresentation is a form of 'actual fraud.'" (Gold v. Los Angeles Democratic League (1975) 49 Cal.App.3d 365, 373, 122 Cal.Rptr. 732.) The elements of a cause of action for negligent misrepresentation are "(1) a false representation of a material fact, (2) made recklessly or without reasonable ground for believing its truth, (3) with intent to induce reliance thereon, (4) on which the plaintiff justifiably relies, (5) to his injury." (Id. at p. 374, 122 Cal.Rptr. 732.)
[7] Section 1709, involving fraudulent deceit, provides: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Further, a "deceit," within the meaning of section 1709 includes "[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true." (§ 1710, subd. 2.)
[8] In Fifield Manor v. Finston, supra, 54 Cal.2d 632, 7 Cal.Rptr. 377, 354 P.2d 1073, the plaintiff was obligated under a life-care medical contract to the decedent killed in a car crash by defendant's negligence. Noting the plaintiff's "alleged direct right of recovery depend[ed] upon its contractual obligation to decedent," the Supreme Court observed that "with the exception of an action by the master for tortious injuries to his servant, thus depriving the master of his servant's services, which traces back to medieval English law [citations], the courts have quite consistently refused to recognize a cause of action based on negligent, as opposed to intentional, conduct which interferes with the performance of a contract between third parties or renders its performance more expensive or burdensome." (Id. at pp. 635-636, 7 Cal.Rptr. 377, 354 P.2d 1073.) The Supreme Court concluded that the plaintiff who had contracted to provide medical care to the person injured by the defendant could not bring a direct negligence action against the defendant to recover its medical costs. (Id. at pp. 636-637, 7 Cal.Rptr. 377, 354 P.2d 1073.)
[9] In I.J. Weinrot & Son, Inc. v. Jackson, supra, 40 Cal.3d 327, 220 Cal.Rptr. 103, 708 P.2d 682, the Supreme Court held that section 49, subdivision (c), which provides that the rights of personal relations generally forbid any injury to a servant affecting his ability to serve his master, did not give a corporate employer a cause of action for damages resulting from injuries to a key employee caused by a third party defendant's negligent driving. (Id. at p. 329, 220 Cal.Rptr. 103, 708 P.2d 682.)
[10] In Fischl v. Paller & Goldstein, supra, 231 Cal.App.3d 1299, 282 Cal.Rptr. 802, the appellate court held that "an employer does not have a cause of action to recover damages for increased workers' compensation insurance premiums and lost profits incurred as a result of negligent injury to its employee." (Id. at p. 1301, 282 Cal.Rptr. 802.) The court also observed that "there is no general negligence cause of action in California for an employer seeking recovery for expenses and lost profits incurred as a result of negligent injury to its business employee." (Id. at p. 1303, 282 Cal. Rptr. 802.)
[11] In Herrick v. Superior Court, supra, 188 Cal.App.3d 787, 233 Cal.Rptr. 675, the plaintiff sued defendant for property damage, interference with business interest, loss of employee's services, loss of business goodwill and loss of business opportunities arising out of an automobile accident where the intoxicated defendant collided with plaintiff's truck being driven by plaintiff's employee. (Id. at pp. 788-789, 233 Cal.Rptr. 675.) Citing I.J. Weinrot & Son, Inc. v. Jackson, supra, 40 Cal.3d 327, 220 Cal.Rptr. 103, 708 P.2d 682, the defendant asserted the Supreme Court had ruled that California did not provide an employer with any cause of action for negligent injury to his business employee. (Herrick, supra, at p. 789, 233 Cal.Rptr. 675.) The plaintiff replied that the holding in Weinrot did not bar recovery for injury to his employee or his business because he had alleged intentional rather than negligent injury. (Herrick, supra, at p. 789, 233 Cal.Rptr. 675.) We concluded that recklessness in driving under the influence did not constitute an intentional tort and thus granted a writ mandating the superior court to sustain the demurrer except as to the claim for property damages to plaintiff's truck. (Id. at p. 792, 233 Cal. Rptr. 675.) We also noted that "most jurisdictions reject liability for negligent harm to a business employee, but are willing to recognize liability for intentional harm." (Id. at p. 791, 233 Cal.Rptr. 675, italics omitted.)
[12] The remoteness doctrine has at times been analyzed in terms of proximate cause. In that vein, in Evan F. v. Hughson United Methodist Church, supra, 8 Cal.App.4th 828, 10 Cal.Rptr.2d 748, the appellate court observed: "Proximate cause"in itself an unfortunate termis merely the limitation which the courts have placed upon the actor's responsibility for the consequences of the actor's conduct. In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would "set society on edge and fill the courts with endless litigation." As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy.'" (Id. at p. 835, 10 Cal.Rptr.2d 748.)
[13] In Holmes v. Securities Investor Protection Corporation, supra, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532, the United States Supreme Court observed that the common law concept of proximate cause demanded "some direct relation between the injury asserted and the injurious conduct alleged. Thus, a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." (Id. at pp. 268-269, 112 S.Ct. 1311.)
[14] California case law suggests that with respect to the applicability of the remoteness doctrine, cases involving intended harm might properly be treated differently from negligence cases. (I.J. Weinrot & Son, Inc. v. Jackson, supra, 40 Cal.3d at pp. 340-341 & fn. 9, 220 Cal.Rptr. 103, 708 P.2d 682; Fifield Manor v. Finston, supra, 54 Cal.2d at p. 636, 7 Cal.Rptr. 377, 354 P.2d 1073; Herrick v. Superior Court, supra, 188 Cal.App.3d at p. 791, 233 Cal.Rptr. 675.)
[15] "What distinguishes actionable fraudulent deceit is the element of knowing intent to induce someone's action to his or her detriment with false representations of fact. Fraud is an intentional tort; it is the element of fraudulent intent, or intent to deceive, that distinguishes it from actionable negligent misrepresentation...." (City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra, 68 Cal.App.4th at p. 482, 80 Cal. Rptr.2d 329.)
[16] As noted, Plaintiffs suggest that negligent misrepresentation as a form of statutory deceit should be treated as something more than mere negligence and perhaps tantamount to an intentional tort. However, in Ventura County Nat. Bank v. Macker, supra, 49 Cal. App.4th 1528, 57 Cal.Rptr.2d 418, the appellate court rejected a similar contention. Specifically, rejecting an argument that the three-year statute of limitations for fraud was applicable since negligent misrepresentation was "a form of fraud," the appellate court concluded such negligent misrepresentation claim was subject to the two-year statute of limitations applicable to various negligence claims since "the essence" of the cause of action was "negligence, not fraud." (Id. at pp. 1530-1531, 57 Cal.Rptr.2d 418.) In doing so, the appellate court observed: "Negligent misrepresentation may be a species of deceit, but it is not a thoroughbred." (Id. at p. 1529, 57 Cal.Rptr.2d 418.) The court also observed: "Negligent misrepresentation is born of the union of negligence and fraud. If negligence is the mother and misrepresentation the father, it more closely resembles its mother." (Id. at p. 1531, 57 Cal.Rptr.2d 418.)
[17] In Herrick v. Superior Court, supra, 188 Cal.App.3d 787, 233 Cal.Rptr. 675, in examining the reasons why most jurisdictions reject liability for negligent harm to a business employee but recognize liability for intentional harm, we noted such "tort is intentional in the sense the defendant must have either desired to bring about the harm or known his conduct was substantially certain to produce this result." (Id. at pp. 791-792, 233 Cal. Rptr. 675.) We also noted that many California cases, "while rejecting the cause of action for negligent harm to a business employee, state intentional harm would be actionable; but there appears to be no decision actually involving a cause of action for intentionally harming an employee." (Id. at p. 792, 233 Cal.Rptr. 675.) Under the circumstances presented in Herrick, we concluded that in the context of recklessly driving under the influence, the "damages caused to plaintiff's business resulting from the injuries to his employee cannot reasonably be seen as intended by the defendant in the sense of a `calculated disruption' of plaintiff's business." (Id. at p. 793, 233 Cal.Rptr. 675.)
[18] Code of Civil Procedure section 472c, subdivision (c) provides: "As used in this section, 'open on appeal' means that a party aggrieved by an order listed in subdivision (b) may claim the order as error in an appeal from the final judgment in the action."
[19] In Building Industry Assn. v. City of Camarillo, supra, 41 Cal.3d 810, 226 Cal.Rptr. 81,718 P.2d 68, the Supreme Court observed that "it is `wasteful of trial court time' to require the plaintiff to undergo a probably unsuccessful court trial merely to obtain an appealable judgment." (Id. at p. 817, 226 Cal.Rptr. 81, 718 P.2d 68.)
[20] Former section 1714.45 provided:

"(a) In a product liability action, a manufacturer or seller shall not be liable if:
"(1) The product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community; and
"(2) The product is a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, tobacco, and butter, as identified in comment i to Section 402A of the Restatement (Second) of Torts.
"(b) For purposes of this section, the term 'product liability action' means any action for injury or death caused by a product, except that the term does not include an action based on a manufacturing defect or breach of an express warranty.
"(c) This section is intended to be declarative of and does not alter or amend existing California law, including Cronin v. J.B.E. Olson Corp., (1972) 8 Cal.3d 121 [104 Cal.Rptr. 433, 501 P.2d 1153], and shall apply to all product liability actions pending on, or commenced after, January 1, 1988."
[21] In Richards v. Owens Illinois, Inc., supra, 14 Cal.4th 985, 60 Cal.Rptr.2d 103, 928 P.2d 1181, the Supreme Court observed that "the import of [former] section 1714.45 itself is clear. Though the statute states only an exemption from direct `liability]' where specified conditions are met, the express premise which justifies this immunity is of a broader nature. This premise is that suppliers of certain products which are `inherently unsafe,' but which the public wishes to have available despite awareness of their dangers, should not be responsible in tort for resulting harm to those who voluntarily consumed the products despite such knowledge. With respect to injuries meeting the statute's requirements, that principle precludes the assignment of legal `fault' to such suppliers in all contexts. ..." (Id. at p. 1002, 60 Cal.Rptr.2d 103, 928 P.2d 1181.) The Supreme Court also observed that the Legislature "has made" a "policy judgment" that "suppliers have no legal `fault' or responsibility for providing" cigarettes. (Ibid.) Further, the Supreme Court further observed that "the Legislature has determined] the mere manufacture and sale of [tobacco] products create no tortious responsibility to individuals who voluntarily consumed them with the community's knowledge that they were unsafe." (Ibid.)
[22] Plaintiffs contend the superior court erred in concluding former section 1714.45 barred claims against various Defendants who did not manufacture or sell tobacco products. Specifically, Plaintiffs contend such statute did not immunize The Tobacco Institute, Inc., The Council for Tobacco Research-U.S.A., Inc., or Hill & Knowlton, Inc., because those Research/Publicizing Defendants were not tobacco manufacturers or sellers. (Id., subd. (a).) However, since any alleged liability of the Research/Publicizing Defendants would derive from their alleged conspiracy with the Manufacturing Defendants to conceal the risks of smoking, the Manufacturing Defendants' statutorily-accorded immunity would extend to the Research/Publicizing Defendants.
[23] Amended section 1714.45 provides:

"(a) In a product liability action, a manufacturer or seller shall not be liable if both of the following apply:
"(1) The product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community.
"(2) The product is a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, and butter, as identified in comment i to Section 402A of the Restatement (Second) of Torts.
"(b) This section does not exempt the manufacture or sale of tobacco products by tobacco manufacturers and their successors in interest from product liability actions, but does exempt the sale or distribution of tobacco products by any other person, including, but not limited to, retailers or distributors.
"(c) For purposes of this section, the term `product liability action' means any action for injury or death caused by a product, except that the term does not include an action based on a manufacturing defect or breach of an express warranty.
"(d) This section is intended to be declarative of and does not alter or amend existing California law, including Cronin v. J.B.E. Olson Corp., [supra,] 8 Cal.3d 121 [104 Cal.Rptr. 433, 501 P.2d 1153], and shall apply to all product liability actions pending on, or commenced after, January 1, 1988.
"(e) This section does not apply to, and never applied to, an action brought by a public entity to recover the value of benefits provided to individuals injured by a tobacco-related illness caused by the tortious conduct of a tobacco company or its successor in interest, including, but not limited to, an action brought pursuant to Section 14124.71 of the Welfare and Institutions Code. In such an action brought by a public entity, the fact that the injured individual's claim against the defendant may be barred by a prior version of this section shall not be a defense. This subdivision does not constitute a change in, but is declaratory of, existing law relating to tobacco products.
"(f) It is the intention of the Legislature in enacting the amendments to subdivisions (a) and (b) of this section adopted at the 1997-98 Regular Session to declare that there exists no statutory bar to tobacco-related personal injury, wrongful death, or other tort claims against tobacco manufacturers and their successors in interest by California smokers or others who have suffered or incurred injuries, damages, or costs arising from the promotion, marketing, sale, or consumption of tobacco products. It is also the intention of the Legislature to clarify that such claims which were or are brought shall be determined on their merits, without the imposition of any claim of statutory bar or categorical defense.
"(g) This section shall not be construed to grant immunity to a tobacco industry research organization." (Stats.1997, ch. 570, § 1.)
[24] The issue of the retroactivity of amended section 1714.45 is pending before the California Supreme Court in Naegele v. R.J. Reynolds Tobacco Co. (2000) 81 Cal.App.4th 503, 96 Cal.Rptr.2d 666 (S090420, review granted Oct. 18, 2000).
[25] In overruling Defendants' demurrer to the Cotchett-represented plaintiffs' intentional fraud claims, the superior court stated the remoteness doctrine was inapplicable to those claims. In light of our conclusion that former section 1714.45 barred the portions of such intentional fraud claims based upon Defendants' alleged nondisclosure/concealment, we need not reach the issue whether those claims were also barred under the remoteness doctrine.